**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MORGAN CARPENTER, on behalf of herself and others similarly situated, | : : : | CASE NO: 2:21-cv-3381 |
| Plaintiff, | : : : | |
| v. | : : : | **COMPLAINT – CLASS ACTION** |
| ALLSTATE INSURANCE COMPANY | : : : | |
| Defendant. | : : : : : | **JURY TRIAL DEMANDED** |
| _____ / | | |

Plaintiff Morgan Carpenter (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

**NATURE OF ACTION**

1.      This case involves an arrangement by Allstate Insurance Company ("Allstate") (by and through its agents) to market its services through the use of autodialers in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2.      AGAX Leads ("AGAX"), a telemarketing operation based overseas, made unsolicited automated telephone calls to Plaintiff and proposed Class Members on Allstate's behalf.  By using an automated telephone dialing system to make hundreds of calls without first obtaining the prior express written consent of recipients via its agent, Allstate violated the TCPA.

3.      Allstate, by and through AGAX and others, contacted Plaintiff and Class Members on their cellular telephones without their prior express written consent within the

meaning of the TCPA.   Allstate violated the TCPA by contacting Plaintiff and Class Members on their cellular telephones for non-emergency purposes via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or by using "an artificial or prerecorded voice" as described in 47 U.S.C. §227(b)(1)(A), without their prior express written consent within the meaning of the TCPA.

4.      In addition, many of the calls described were made to individuals who registered their telephone number with the National Do Not Call Registry ("DNC").  As such, calls made to those number constitute additional, separate violations of the TCPA pursuant to 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

6.      This Court has personal jurisdiction over Allstate because the company is licensed to do business in the State of Ohio, regularly conducts such business, and purposefully directed the activity at issue in this case to individuals in Ohio, including Plaintiff.

7.      Venue is proper in the United States District Court for the Southern District of Ohio because Plaintiff resides and received the calls at issue in the Southern District of Ohio, and defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced.

## PARTIES

8.      Plaintiff Morgan Carpenter is, and at all times mentioned herein was, an individual citizen of Ohio.

9.      Allstate Insurance Company is an Illinois insurance company with its headquarters in Illinois.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

10.     In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

11.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."

12.     Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express written consent of the called party.

13.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.     The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

15.     The FCC has defined prior express written consent in 47 C.F.R. § 64.1200(f)(8) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

16.     Under the TCPA, the burden is on defendants to demonstrate prior express written consent.

17.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

18.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[3]

19.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 F.C.C.R. at 6586 (¶ 34).

20.     The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at n.107.

21.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the
> outside sales entity access to information and systems that normally would be
> within the seller's exclusive control, including: access to detailed information

---

[3] In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 F.C.C.R. at 6592 (¶ 46).

22.     Allstate is legally responsible for ensuring that its calling vendors complied with the TCPA, even if Allstate itself did not make the calls.

23.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information. "  *Id.* at 6592-93 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

24.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

25.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

26.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

### Facts Related to Plaintiff

27.     Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

28.     Since at least December 2015, Plaintiff has been the exclusive and customary user of telephone number (740) XXX-1530, which was assigned to a cellular telephone service.  For all times relevant to this litigation, Plaintiff's cellular telephone number was registered on the National Do Not Call Registry.

29.     On December 27, 2019, Plaintiff received a telephone call to her cell phone that appeared to come from telephone number (740) 427-1002.  The 740 area code is Plaintiff's home area code.

30.     On information and belief, the call was made by AGAX.  On information and belief, AGAX operates outside of the United States, but utilized technology made the call appear to be coming from the Plaintiff's home area, generally known as "spoofing" the caller ID number.

31.     On information and belief, Overstep Leads ("Overstep") purchased Plaintiff's contact information from Phoenix Leads ("Phoenix").  Overstep then used AGAX to make the

calls in question to Plaintiff.    Plaintiff did not provide consent to AGAX, Overstep, or Phoenix to be telemarketed on behalf of Allstate, or for any other purpose.

32.    Plaintiff answered the call, during which she heard a long pause.  Upon hearing this, she hung up.

33.    On January 16, 2020, Plaintiff received two additional telephone calls from the same caller ID.

34.    In both cases, Plaintiff heard a long pause upon picking up the phone.  On information and belief, this is indicative of the use of an automated telephone dialing system.

35.    On the third call, Plaintiff stayed on the line in order to determine who was repeatedly calling her.  She was eventually connected to an operator.

36.    This operator took down Plaintiff's personal information, including her name, address, date of birth, type of vehicles owned, and driving history.[4]

37.    The operator informed Plaintiff that she could receive a quote for her car insurance needs, and that she would be connected to an agent for that quote.

38.    Plaintiff then received a series of emails from Eric Thompson, an Allstate Insurance agent located at 11340 Kenn Road, Cincinnati, Ohio.  Mr. Thompson's email, which contained Allstate's logo and branding, provided a quote for insurance coverage to be provided by Allstate.

39.    Plaintiff then received several further emails from Mr. Thompson regarding the insurance quote.

---

[4] Because Plaintiff did not know the identity of the entity calling her and thought the call could be a scam, she provided a fictitious name.

**Actual Authority**

40.     Allstate is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

41.     Upon information and belief, Allstate and its agents have contracted with AGAX to employ an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), to contact customers such as Plaintiff.  At least some of those calls, such as the calls to Plaintiff, are made to cellular telephones.

42.     The telephone number that AGAX, acting on behalf of Allstate, called to contact Plaintiff made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. §  227(b)(1)(A)(iii).

43.     Plaintiff did not provide her "prior express written consent" allowing Allstate or its agents to place telephone calls to Plaintiff's cellular phone placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

44.     AGAX, acting on behalf of Allstate, did not make telephone calls to Plaintiff's cellular phone "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

45.     The calls made by AGAX, acting on behalf of Allstate, to Plaintiff's cellular phone placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's prior express written consent, violated 47 U.S.C. § 227(b)(1)(A).

46.     Under the TCPA, the burden is on Allstate to demonstrate that Plaintiff and Class members provided prior express written consent within the meaning of the statute.[5]

47.     Allstate acted willfully, knowingly, and without regard to the TCPA when it caused the calls to be initiated as described above.

---

[5] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

**Ratification**

48.     In the alternative, Allstate and its agents knowingly accepted the benefits of the marketing arrangement described above when they accepted leads from the lead generator entity. These leads provided Allstate and its agents with additional business prospects.

49.     Upon information and belief, Allstate and its agents were aware of the marketing arrangement and that the lead generator entity was making calls using an "automatic telephone dialing system" when they accepted the marketing leads from the lead generator entity.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

51.     Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

52.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons in the United States (i) to whom AGAX made one or more calls (ii) for the purpose of encouraging the purchase of Allstate goods or services (iii) which call(s) were transferred to an Allstate agent(s) (iv) on or after September 23, 2016, (v) that originated from leads sold by Phoenix to Overstep.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class.

53.     Excluded from the Class are Allstate, and any entities in which the Allstate has a controlling interest, Allstate's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

54.    Plaintiff believes Class members number approximately 500 individuals.

55.    Plaintiff and all members of the Class have been harmed by the acts of Allstate, because their privacy has been violated, they were subject to annoying and harassing calls that constitute a nuisance, and many were charged for incoming calls.

56.    This Class Action Complaint seeks injunctive relief and money damages.

57.    The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

58.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

59.    Further, the Class can be identified through records in Allstate's possession.  In fact, Allstate has already generated a list of Class members in pre-filing, informal discovery.

60.    There are well-defined, nearly identical, questions of law and fact affecting all parties.

61.    The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

62.    Such common questions of law and fact include, but are not limited to, the following:

a.    Whether AGAX, on behalf of Allstate used an automatic telephone dialing system in making non-emergency calls to Class members' cell phones;

b.    Whether AGAX, acting on behalf of Allstate used an artificial or prerecorded voice in its non-emergency calls to Class members' cell phones;

- 10 -

       c.      Whether Overstep engaged in telemarketing activities on behalf of Allstate without first obtaining prior express written consent (*i.e.*, written consent that is clearly and unmistakably stated);

       d.      Whether Phoenix engaged in telemarketing activities on behalf of Allstate without first obtaining prior express written consent (*i.e.*, written consent that is clearly and unmistakably stated);

       e.      Whether Allstate can meet its burden of showing they obtained prior express written consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls;

       f.      Whether Allstate's conduct was knowing and/or willful;

       g.      Whether Allstate is liable for statutory damages; and

       h.      Whether Allstate should be enjoined from engaging in such conduct in the future.

63.     As a person who received non-emergency telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without her prior express written consent to Allstate within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

64.     As a person who received more than one call within a twelve month period to her cellular phone number that had been previously registered with the National Do Not Call Registry, Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

65.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

66.     Plaintiff has no interests which are antagonistic to any member of the Class.

67.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

68.     A class action is the superior method for the fair and efficient adjudication of this controversy.

69.     Class wide relief is essential to compel Allstate to comply with the TCPA.

70.     The interest of the Class members in individually pursuing claims against Allstate is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Allstate from engaging in the same behavior in the future.

71.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such calls to their cellular telephones.

72.     Allstate has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

73.     Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST COUNT

### STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

74.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

75.     The foregoing acts and omissions of Allstate constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

76.     As a result of Allstate's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

77.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Allstate's violation of the TCPA in the future.

78.     Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

### SECOND COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

79.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

80.     The foregoing acts and omissions of Allstate constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

81.     As a result of the Allstate's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

82.     Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Allstate in the future.

83.     Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

### THIRD COUNT

### VIOLATIONS OF THE NATIONAL DO NOT CALL REGISTRY
### 47 U.S.C. § 227 *ET SEQ.*

84.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

85.     Allstate violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

86.     The foregoing acts and omissions of Allstate constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

87.     As a result of Allstate's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

88.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Allstate's violation of the TCPA in the future.

- 14 -

89. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## FOURTH COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE NATIONAL DO NOT CALL REGISTRY, 47 U.S.C. § 227 *ET SEQ.*

90. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

91. Allstate violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

92. The foregoing acts and omissions of Allstate constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

93. As a result of the Allstate's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

94. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Allstate in the future.

95. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Allstate:

A.     Injunctive relief prohibiting such violations of the TCPA by Allstate in the future;

B.     As a result of the Allstate's willful and/or knowing violations of 47 U.S.C. § 227(b)(1) & (c), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C.     As a result of Allstate's statutory violations of 47 U.S.C. § 227(b)(1) & (c), Plaintiff seeks for herself and each Class member $500 in statutory damages for each and every violation of the TCPA;

D.     An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F.     Such other relief as the Court deems just and proper.

Dated: June 9, 2021                    By:  */s/ Michael J. Boyle, Jr.*_____

                                       MEYER WILSON CO., LPA
                                       Matthew R. Wilson (Ohio State Bar No. 0072925)
                                       Email:  mwilson@meyerwilson.com
                                       Michael J. Boyle, Jr. (Ohio State Bar No. 0091162)
                                       Email:  mboyle@meyerwilson.com
                                       305 W. Nationwide Blvd.
                                       Columbus, Ohio 43215
                                       Telephone:  (614) 224-6000
                                       Facsimile:  (614) 224-6066

                                       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                       Daniel M. Hutchinson (*pro hac vice* to be filed)
                                       Email:  dhutchinson@lchb.com
                                       275 Battery Street, 29th Floor
                                       San Francisco, California  94111-3339
                                       Telephone:  (415) 956-1000
                                       Facsimile:  (415) 956-1008


                                       *Attorneys for Plaintiff and the Proposed Class*

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all counts so triable.


Dated: June 9, 2021          By:      */s/ Michael J. Boyle, Jr.*     

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio State Bar No. 0072925)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (Ohio State Bar No. 0091162)
Email:  mboyle@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice* to be filed)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008


*Attorneys for Plaintiff and the Proposed Class*