**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| MORGAN CARPENTER, on behalf of herself and others similarly situated, | CIVIL ACTION |
| Plaintiff, | |
| v. | Case No. 2:21-cv-3381-EAS-EPD |
| ALLSTATE INSURANCE COMPANY, | Judge: Edmund A. Sargus |
| Defendant. | Magistrate Judge Elizabeth P. Deavers |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT, FOR CERTIFICATION OF SETTLEMENT CLASS, AND FOR
<u>APPROVAL OF NOTICE PLAN AND FORM OF NOTICE</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

I. BACKGROUND AND SUMMARY OF THE PROPOSED SETTLEMENT ................. 1

    A. This Case Has Been Investigated Extensively. ................................................... 1

    B. The Proposed Settlement Resulted from Arm's-Length Negotiations
    Before a Highly Experienced and Respected Mediator. ...................................... 2

    C. The Settlement Provides Appropriate Relief to Settlement Class Members. ........ 3

        1. The Settlement Class ................................................................................ 3

        2. Injunctive Relief for Settlement Class Members. ...................................... 3

        3. Monetary Relief for Settlement Class Members ........................................ 4

        4. Class Release ............................................................................................ 4

        5. Settlement Administration and Class Notice ............................................. 5

        6. Attorneys' Fees and Costs ........................................................................ 5

ARGUMENT .................................................................................................................. 6

I. THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE,
AND ADEQUATE UNDER RULE 23(e)(2) ................................................................. 6

    B. The Class Representative and Class Counsel Have Adequately
    Represented the Class. ....................................................................................... 8

    C. The Settlement was Negotiated at Arm's-length by Vigorous Advocates,
    and There Has Been No Fraud or Collusion. ..................................................... 10

    D. The Settlement Provides Substantial Relief for the Class ................................. 11

        1. Diverse and substantial legal risks weigh in favor of settlement. ............ 11

        2. The monetary terms of this proposed settlement fall within the
        range of prior TCPA class action settlements. ......................................... 12

        3. The method of providing relief is effective and treats all members
        of the Class fairly. .................................................................................. 13

        4. The proposed award of attorneys' fees is fair and reasonable. ................ 14

II. THE SETTLEMENT SATISFIES RULE 23. .............................................................. 15

    A. The members of the Class are so numerous that joinder of all of them is
    impracticable. ................................................................................................... 15

    B. Questions of law and fact are common to the members of the Class. ................ 16

**TABLE OF CONTENTS**
**(continued)**

Page

C.  Plaintiff's claims are typical of the claims of the members of the Class she
represents. ........................................................................................................... 16

D.  The questions of law and fact common to the members of the Class
predominate over any questions potentially affecting only individual
members. ............................................................................................................. 17

E.  A class action is superior to other available methods for the fair and
efficient adjudication of the claims of Plaintiff and the Class. ............................ 18

III.  THE PARTIES' NOTICE PLAN SATISFIES THE REQUIREMENTS OF RULE
23 AND DUE PROCESS REQUIREMENTS. ............................................................... 18

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997)................................................................................................. 6, 17, 18

*Baptista v. Mut. of Omaha Ins. Co.,*
  859 F. Supp. 2d 236 (D.R.I. 2012).................................................................................. 9, 10

*Beattie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) .............................................................................................. 17

*Brent v. Midland Funding, LLC,*
  No. 3:11-cv-1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) ....................................... 7

*Couser v. Comenity Bank,*
  125 F. Supp. 3d 1034 (S.D. Cal. 2015)................................................................................ 13

*Daffin v. Ford Motor Co,*
  458 F.3d 549 (6th Cir. 2006) .............................................................................................. 16

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974)............................................................................................................ 19

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.,*
  137 F.R.D. 240, 244 (S.D. Ohio 1991) ................................................................................. 9

*Estrada v. iYogi, Inc.,*
  No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ........................... 13

*Gascho v. Global Fitness Holdings, LLC,*
  No. 14-3761, 2016 WL 2802472 (6th Cir. May 13, 2016) .............................................. 14, 15

*Gascho v. Global Fitness Holdings, LLC,*
  No. 2:11-cv-436, 2014 WL 3548319 (S.D. Ohio July 16, 2014), *report and recommendation
  adopted*, 2014 WL 3543819 (S.D. Ohio 2014), *aff'd*, 2016 WL 2802473 (6th Cir. 2016)...... 15

*Gen. Tel. Co. of the Sw. v. Falcon,*
  457 U.S. 147 (1982)............................................................................................................ 16

*Grady v. de Ville Motor Hotel, Inc.,*
  415 F.2d 449 (10th Cir. 1969) ............................................................................................. 13

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ............................................................................................. 13

*Ikuseghan v. Multicare Health Sys.,*
  No. 3:14-CV-05539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016)........................... 12

*In re Am. Med. Sys., Inc.,*
  75 F.3d 1069 (6th Cir. 1996) .............................................................................................. 16

*In re AOL Time Warner ERISA Litig.,*
  Case No. 02-cv-8853, 2006 WL 2789862, at *7 (S.D.N.Y. Sept. 27, 2006)............................ 9

*In re Inter-Op Hip Prosthesis Liab. Litig.,*
  204 F.R.D. 330 (N.D. Ohio 2001) ........................................................................................ 9

*In re LandAmerica 1031 Exch. Servs. Inc.,*
  MDL No. 2054 WL 13124593 (D.S.C. Jul. 12, 2012) ......................................................... 19

## TABLE OF AUTHORITIES
### (continued)

Page

*Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ............................................................................... 8, 19
*Levell v. Monsanto Research Corp.*,
   191 F.R.D. 543 (S.D. Ohio 2000) .............................................................................. 12
*Liberte Capital Grp. v. Capwill*,
   No. 5:99-cv-818, 2007 WL 2492461 (N.D. Ohio Aug. 29, 2007) ............................. 15
*Markos v. Wells Fargo Bank, N.A.*,
   No. 1:15-cv-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017) ...................... 13
*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ................................................................................................. 19
*Philips v. Philip Morris Cos. Inc.*,
   298 F.R.D. 355 (N.D. Ohio 2014) ............................................................................. 16
*Priddy v. Edelman*,
   883 F.2d 438 (6th Cir. 1989) .................................................................................... 10
*Rawlings v. Prudential-Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993) ........................................................................................ 14
*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ............................................................................................. 17
*Vassalle v. Midland Funding LLC*,
   708 F.3d 747 (6th Cir. 2013) ...................................................................................... 6
*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) .................................................................................... 12

**Statutes**
Fed. R. Civ. P. 23(a) ...................................................................................................... 15, 16
Fed. R. Civ. P. 23(a)(1) ........................................................................................................ 16
Fed. R. Civ. P. 23(a)(2) ........................................................................................................ 16
Fed. R. Civ. P. 23(a)(3) ........................................................................................................ 16
Fed. R. Civ. P. 23(a)(4) .......................................................................................................... 9
Fed. R. Civ. P. 23(b)(3) .................................................................................................... 17, 18
Fed. R. Civ. P. 23(b)(3)(D) ................................................................................................... 18
Fed. R. Civ. P. 23(c)(2)(A) ................................................................................................... 20
Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................... 19, 20
Fed. R. Civ. P. 23(c)(2)(C)(iii) ............................................................................................. 14
Fed. R. Civ. P. 23(e) .............................................................................................................. 6
Fed. R. Civ. P. 23(e)(1) ...................................................................................................... 1, 18
Fed. R. Civ. P. 23(e)(1)(A) ..................................................................................................... 7
Fed. R. Civ. P. 23(e)(1)(B) .................................................................................................. 7, 8
Fed. R. Civ. P. 23(e)(2) .......................................................................................................... 1
Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................................................. 13

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Rules**
Rubenstein, Newberg on Class Actions (5th ed. 2015) ..................................................... 8, 10, 15

**Treatises**
Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002) ........................... 7
Manual for Complex Litigation (4th ed. 2004)........................................................................ 7, 8
McLaughlin on Class Actions (8th ed. 2011) ............................................................................ 10

**INTRODUCTION**

Plaintiff Morgan Carpenter is pleased to present to the Court a proposed class action settlement with Allstate Insurance Company ("Defendant").  Federal Rule of Civil Procedure 23 provides that at this initial stage of the Settlement-approval process, notice should issue if the Court determines it "will likely be able to" (1) approve the proposed Settlement, based on whether the proposed Settlement Class representative and proposed Class Counsel "have adequately represented the class," and whether the Settlement "was negotiated at arm's length," provides "adequate" relief for the Settlement Class, and treats Settlement Class Members "equitably relative to each other"; and (2) "certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1) & (2).  The procedural and substantive aspects of the Settlement satisfy those requirements.

Plaintiff therefore respectfully requests that the Court enter an order (1) directing that notice be provided to Settlement Class Members; (2) appointing Plaintiff as representatives of the proposed Settlement Class for purposes of disseminating notice; (3) appointing Plaintiff's counsel as counsel for the proposed Settlement Class; (4) authorizing the retention of Angeion as Settlement Administrator; and (5) scheduling a hearing to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and whether the Settlement Class should be certified ("Final Approval Hearing").

## I. BACKGROUND AND SUMMARY OF THE PROPOSED SETTLEMENT

### A. THIS CASE HAS BEEN INVESTIGATED EXTENSIVELY.

Seventeen months ago, on January 30, 2020, Plaintiff Morgan Carpenter's counsel sent a letter to Defendant informing it of her intention to pursue class action litigation against Defendant under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), on behalf of herself and all similarly situated persons.  Declaration of Matthew R. Wilson, at ¶ 10.

The parties then engaged in eight months of productive discussion, centered around a pre-filing mediation of claims on a class-wide basis. *Id.* at 11. These discussions culminated on September 23, 2020 with the execution of the parties' Mediation Agreement and Schedule, which tolled the class claims, permitted pre-filing discovery, and provided for mediation. *Id.*

Pursuant to this Mediation Agreement, Plaintiff served a comprehensive set of discovery requests, including requests that Defendant identify the number of calls placed by or on behalf of Allstate, the persons who received such calls, and its practices with regard to the National Do-Not-Call Registry. *Id.* at 12. In response, Defendant produced responsive data and pages of policy documents. *Id.* at 13.

For its part, Defendant pursued formal and informal discovery of Plaintiff, including discovery exploring a potential prior express written consent defense. Plaintiff provided Defendant with written responses, documents, and recordings of the calls at issue.

### B. THE PROPOSED SETTLEMENT RESULTED FROM ARM'S-LENGTH NEGOTIATIONS BEFORE A HIGHLY EXPERIENCED AND RESPECTED MEDIATOR.

After completing this discovery, the parties participated in a mediation. They engaged the Honorable Morton Denlow (ret.) of JAMS in Chicago, Illinois, an experienced and well-respected mediator. Wilson Decl., at ¶ 14. The parties held a pre-mediation conference call with Judge Denlow on December 9, 2020, in which they discussed, among other things, their ongoing voluntary exchange of information to facilitate class settlement negotiations. *Id.* at ¶ 15. The parties thereafter submitted detailed mediation submissions to Judge Denlow setting forth their respective views as to the merits of their respective cases. *Id*.

On January 25, 2021, the parties met for a Zoom video mediation session with Judge Denlow. *Id.* at ¶ 16. After a full day of arm's-length negotiations and after reaching impasse, the parties accepted a mediator's proposal and signed a term sheet setting forth the material

2255039.1

terms of the agreement. *Id.* The parties thereafter proceeded to negotiate the specific terms of the final Settlement Agreement over a period of five months until it was fully executed on June 8, 2021. *Id.* at ¶ 17.

Plaintiff is proud to have obtained meaningful discovery, worked through the complicated issues involved here, and negotiated a class settlement as advantageous as this one is for the class members, entirely before filing the case became necessary, and during the pandemic to boot.

### C.     THE SETTLEMENT PROVIDES APPROPRIATE RELIEF TO SETTLEMENT CLASS MEMBERS.

The Settlement's details are contained in the Agreement signed by the parties, a copy of which is attached as Exhibit A. The following summarizes the Agreement's terms:

### 1.     <u>The Settlement Class</u>

The Settlement Class is defined as "All persons in the United States (i) to whom AGAX Leads made one or more calls (ii) for the purpose of encouraging the purchase of Allstate goods or services (iii) which call(s) were transferred to an Allstate agent(s) (iv) on or after September 23, 2016, up to and including the date of the Preliminary Approval Order of the Settlement (v) that originated from leads sold by Phoenix to Overstep." Agreement, ¶ 3.1. Defendant's records reveal that approximately 500 telephone numbers meet the criteria set for inclusion in the Settlement Class set. *Id.*, ¶ 2.9

### 2.     <u>Injunctive Relief for Settlement Class Members.</u>

Defendant has agreed to take additional remedial measures agreed to by the parties to comply with the TCPA. Agreement, ¶ 4.1.1. First, Defendant shall place Overstep and Phoenix on a prohibited marketing vendor list that prohibits Allstate agents from knowingly doing business with those entities for marketing purposes for a period of not less than one year

following execution of the Agreement. *Id.* Second, Defendant shall provide all Class Members with the option of putting themselves on Allstate's company-specific do-not-call list consistent with Allstate's do-not-call policy. *Id.* Plaintiff reasonably expects that this injunctive relief will end the calls to Class Members that formed the basis of this lawsuit.

### 3. Monetary Relief for Settlement Class Members

The Settlement requires Defendant to fund a payment of $450 for each class member who submits a claim form and separately to pay for all costs of Settlement Notice and Administrative Costs. Agreement, ¶¶ 2.36, 2.36, 4.2.1. The $450 amount represents 90% of the $500 in statutory damages available under the relevant TCPA provisions. 47 U.S.C. § 227(b)(3)(B) ("$500 in damages for each such violation"); 47 U.S.C. § 227(c)(5)(B) ("up to $500 in damages for each such violation"). Each Class Member who submits a valid Claim shall be entitled to receive this Settlement Relief. Agreement, ¶ 4.2.4.[1]

### 4. Class Release

In exchange for the benefits allowed under the Settlement, Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release only those claims "arising under the TCPA and/or any other federal or state telemarketing laws and/or regulations" that are connected to "AGAX making or causing to be made telemarketing calls promoting Allstate goods or services to the telephone numbers on the Class List." Agreement, ¶ 2.27.

---

[1] If, after payments to Class Members have been made and the deadline for cashing checks has passed, the total amount of uncashed checks will be disbursed as cy pres to a non-profit approved by the Court. Agreement, ¶ 4.2.6. The Parties agree to recommend the Lawyers' Committee for Civil Rights Under Law as the *cy pres* designee. *Id.*

### 5.    Settlement Administration and Class Notice

All costs of class notice and claims administration will be paid by Defendant as part of the Settlement Class Recovery.  Agreement, ¶ 2.36.  The Claims Administrator will be responsible for administering the Settlement in a cost-effective and timely manner, including by effectuating CAFA Notice, Mail Notice, Website Notice, the Settlement Website, and a Toll-Free Settlement Hotline; administering the Settlement Relief, and providing all other related support, reporting, and administration as provided in the Settlement Agreement.  *Id.*, ¶ 5.3, 6.  The parties negotiated a hard cap such that Settlement administration and notice costs will not exceed $17,500.  Wilson Decl., at ¶ 18.

Within forty-five (45) days of entry of the Preliminary Approval Order, the Settlement Administrator will mail the Class Notice (Exhibit A to the Agreement) to all Class Members. Agreement, ¶¶ 2.13.1, 6. 1.  Notice will be re-mailed for all Class Members whose emails are returned as undeliverable.  *Id.*, ¶ 6.1.2.

The Settlement Administrator will also establish and maintain a Settlement Website. Agreement, ¶ 6.2.  The Settlement Website will provide for online submission of claims and will also include general information such as the Settlement Agreement; the Mail Notice; the Complaint; this Motion; the Preliminary Approval Order; the ability for anyone wanting a hard copy Claim Form to request one; and, when filed, the Motion for Attorneys' Fees and the Final Approval Order.  *See id.*, ¶ 6.2, 6.2.1.

### 6.    Attorneys' Fees and Costs

Prior to the Final Approval Hearing, Class Counsel will apply to the Court for an award of attorneys' fees and costs—separate from and in addition to the Settlement Class Recovery—of $99,500 for their attorneys' fees and out-of-pocket expenses incurred in prosecuting the action. *See* Agreement, ¶ 15.1.  As will be addressed in Class Counsel's motion for attorneys' fees,

Sixth Circuit courts commonly award reasonable attorneys' fees, and it is appropriate to compensate Class Counsel in this amount for the work they have performed in procuring a settlement for the Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Class Members, and obtaining dismissal of the action. It should be noted, however, that the enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs. *See id.*, ¶ 15.1.1.

Also prior to the Final Approval Hearing, Plaintiff will ask the Court to award her a modest service award of $1,000 for the time and effort she personally invested in this Action. *See* Agreement, ¶ 15.2. As with the request for attorneys' fees and costs, the Settlement is not contingent on Court approval of any service award. *See id.*, ¶ 15.2.1.

## **ARGUMENT**

### I. THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)(2)

Where parties propose to resolve class action litigation through settlement, they must obtain court approval. Fed. R. Civ. P. 23(e); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013). "The inquiry appropriate under Rule 23(e) . . . protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997) (internal quotation marks and citations omitted). Courts typically grant preliminary approval "where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." Newberg § 13:10 (citation omitted); *see also Williams*, 720 F.2d at 921 (noting that the preliminary approval inquiry asks "whether the compromise . . . is illegal or tainted with

collusion"); *Brent v. Midland Funding, LLC*, No. 3:11-cv-1332, 2011 WL 3862363, at *6 (N.D. Ohio Sept. 1, 2011) (noting that "[t]he Court granted the motion for preliminary approval" after "finding that the settlement was within the range of fairness and reasonableness").

Rule 23—and particularly the portions dealing with class settlements—was amended in December, 2018. The first step in the amended process is a preliminary fairness determination. Specifically, the proposed terms of the settlement are submitted to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A) (2018). This allows the Court make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" Manual for Complex Litig. § 21.632 (4th ed. 2004); *see also* 4 William B. Rubenstein, Newberg on Class Actions § 13:13 (5th ed. 2018) (The first step is merely to "ascertain whether notice of the proposed settlement should be sent to the class.").

The new rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. Accordingly, Rule 23(e)(1)(B) now provides that, in order to preliminarily approve the settlement, the court must find that it "will likely be able to" certify the class for the purposes of settlement and find that the settlement is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind Class Members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

> (A)     the class representatives and class counsel have adequately represented the class;
>
> (B)     the proposal was negotiated at arm's length;
>
> (C)     the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of

- 7 -

attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual for Complex Litig. § 21.632; Fed. R. Civ. P. 23(e)(1)(B) (2018).

The next step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2) (2018); *also* Manual for Complex Litig. § 21.633-34.

As explained below, consideration of these factors supports preliminary approval of the Settlement and issuing notice.

### B.     THE CLASS REPRESENTATIVE AND CLASS COUNSEL HAVE ADEQUATELY REPRESENTED THE CLASS.

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. "The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals." Rubenstein, Newberg on Class Actions § 13:44 (5th ed. 2015); *see also Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"). This matter is no exception.

Here, while the case is settling at an early stage of the proceedings, the parties are fully informed of the relevant facts in the case. Critically, the facts of this case are not in dispute. Third parties Phoenix and Overstep originated and sold leads to AGAX Leads, who allegedly placed telephone calls Class Members. Unlike many cases, the dispute in this case, as well as the basis of the settlement, is largely tied to the legal significance of those undisputed factual

allegations.  The parties vigorously disputed whether Allstate was vicariously liable for AGAX

Leads' calls, whether Phoenix and/or Overstep obtained any Class Members' prior express

consent, and whether the rules regarding the National Do-Not-Call registry were violated.

Thus, notwithstanding the fact that no formal discovery had occurred in this case, all

parties entered into negotiations with full knowledge of all relevant information.  The settlement

process took seventeen months, including five months of negotiations to hammer out the final

settlement terms.  *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240,

244 (S.D. Ohio 1991) (approving settlement reached "[a]fter almost six months of concerted

negotiations"); *In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 330, 350 (N.D. Ohio 2001)

("Moreover, when a settlement is the result of extensive negotiations by experienced counsel, the

Court should presume it is fair.") (citation omitted).  Under these circumstances, the parties were

well aware of the potential strengths and weaknesses of the potential claims.[2]

In addition, a plaintiff and counsel are adequate if "[counsel] fairly and adequately

represent the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Here, Plaintiff's claims are aligned

with the claims of the other Class Members.  She thus had every incentive to vigorously pursue

the claims of the class, as she has done to date by remaining involved in this matter since its

inception, including in the settlement process. In addition, Plaintiff retained the services of law

firms with extensive experience in litigating consumer class action cases, TCPA actions in

---

[2] *See also In re AOL Time Warner ERISA Litig.,* Case No. 02-cv-8853, 2006 WL 2789862, at *7
(S.D.N.Y. Sept. 27, 2006) ("The relevant inquiry . . . is whether the plaintiffs have obtained a
sufficient understanding of the case to gauge the strengths and weaknesses of their claims and
the adequacy of the settlement.  The parties need not have engaged in extensive discovery as
long as they have engaged in sufficient investigation of the facts to enable the Court to
intelligently make . . . an appraisal of the settlement."  (internal quotation marks and citations
omitted); *Baptista v. Mut. of Omaha Ins. Co.,* 859 F. Supp. 2d 236, 241 (D.R.I. 2012) (finding
that the parties had sufficient information to settle the case intelligently, notwithstanding that
"[d]iscovery in this case appears to have been minimal and primarily informal").

particular. Wilson Decl., at ¶ 4.  Plaintiff's counsel believe that the parties' settlement is fair, reasonable, and adequate, and in the best interests of the members of the Class. *Id.*, at ¶ 19. Plaintiff's counsel also believes that the benefits of the parties' settlement far outweigh the delay and considerable risk of proceeding to trial.  *Id*.

### C.     THE SETTLEMENT WAS NEGOTIATED AT ARM'S-LENGTH BY VIGOROUS ADVOCATES, AND THERE HAS BEEN NO FRAUD OR COLLUSION.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("In evaluating a proposed settlement of a class action, the district court is required to examine the terms of the settlement and the process by which the settlement was arrived at, to make sure that the terms are reasonable and that the settlement is not the product of fraud, overreaching, or collusion."); Newberg § 13:14 ("The primary procedural factor courts consider in determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arms-length-noncollusive negotiations.").

Here, the Settlement Agreement resulted from good-faith, arm's-length settlement negotiations, culminating in a mediation session with Honorable Morton Denlow (Ret.) of JAMS. Plaintiff and Defendant submitted detailed mediation submissions to Judge Denlow setting forth their respective views as to the strengths of their cases.  Accordingly, the parties negotiated their settlement at arm's-length, absent any fraud or collusion. *See Baptista*, 859 F. Supp. 2d at 241 ("In light of these facts . . . the Court concludes that this is a good settlement which was achieved at an arm's length negotiation with the services of a mediator.")  Moreover, Judge Denlow has mediated thousands of cases, including many TCPA class action cases similar to this one.

2255039.1

### D. THE SETTLEMENT PROVIDES SUBSTANTIAL RELIEF FOR THE CLASS

Plaintiff's and her counsel's zealous advocacy, the arm's-length nature of the Settlement, the relief afforded under the Agreement, and the equitable treatment to the Class all support a finding that the Settlement is fair, reasonable, and adequate. As further detailed below, the Settlement should be preliminarily approved with an order directing that notice be provided to the Class.

#### 1. Diverse and substantial legal risks weigh in favor of settlement.

The Court must also consider the likelihood and extent of any success absent settlement. With this in mind, Plaintiff understands that Defendant has several defenses that would be case-dispositive if it prevailed.

Defendant contended that it was not liable for calls placed by AGAX Leads. To prevail on the merits, Plaintiff would be required to demonstrate that Defendant should be held vicariously liable for the business recruitment practices of its individual insurance agents, who are in turn responsible for the telemarketing actions of AGAX Leads (the company hired to place telephone calls) and Overstep and Phoenix (the companies AGAX Leads hired to generate and sell insurance leads). Although Plaintiff believes her position to be legally meritorious, she faced the risk that the Court or a jury would be persuaded that assigning liability for an alleged sub-agent's actions is too attenuated. To the extent the vicarious liability question will determine the outcome of the case, all Plaintiff's eggs are in one basket; a litigant with ordinary risk tolerance would seek a reasonable compromise rather than insisting on winning all or taking nothing. This issue counsels in favor of settlement.

Defendant also argues that Plaintiff would not be able to maintain a certified class. In particular, Defendant argues that individual issues predominate over common questions of law

and fact.  Defendant asserts that many, if not all, of the calls at issue were actually placed with the recipient's prior express consent.  *See  Ikuseghan v. Multicare Health Sys.*, No. 3:14-CV-05539-BHS, 2016 WL 3976569, at *3 (W.D. Wash. July 25, 2016) (approving TCPA settlement and explaining that "[h]ad …the consent issue been decided against the Class, the Class would likely get nothing.").

Plaintiff disputes these defenses and all others raised by Defendant. But the likelihood of success at trial is far from certain.  *See Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, *10 (N.D. Ill. Aug. 29, 2016) ("In light of the potential difficulties at class certification and on the merits . . ., the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise.").  In that light, the proposed settlement represents substantial value for Class Members, and represents a reasonable choice under the circumstances over continuing to pursue claims in litigation.

### 2.    The monetary terms of this proposed settlement fall within the range of prior TCPA class action settlements.

Courts measure class action settlements against the Class's potential recovery at trial, but recognize that a settlement, by definition, involves Class Members receiving less than the full potential value of their claims.  *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class."); *Levell v. Monsanto Research Corp.,* 191 F.R.D. 543, 550 (S.D. Ohio 2000) ("[T]he Court may not withhold approval simply because the benefits accrued from the agreement are not what a successful plaintiff would have received in a fully litigated case." (internal quotation marks and alterations omitted)).  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy

and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)

Here, the parties agree to resolve this matter for a settlement recovery of $450 for every Class Member. This figure compares extremely well with many other TCPA class action settlements that courts have approved. *See, e.g.*, *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members would receive an estimated $40); *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044-45 (S.D. Cal. 2015) (approving TCPA settlement in which class members received $13.75 each, noting that such a figure "appears to be on the low end of monetary recovery for TCPA class action settlements").

### 3.  The method of providing relief is effective and treats all members of the Class fairly.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments

to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes the gold standard in class member relief: cash payments. Moreover, the allocation of the Settlement Fund among the Class Members is straightforward. Each member of the Class who submits a valid claim form will receive $450.  Class Members do not have to produce any records or other documents, and besides a simple claim form, there are no impediments to receiving compensation.

### 4.      The proposed award of attorneys' fees is fair and reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiff's counsel will seek an award $99,500.  Agr. ¶ 5.01.  Prior to final approval, Plaintiff's counsel will file a separate motion for their requested award of attorneys' fees and expenses, addressing in detail the facts and law supporting their fee request, and the anticipated fee request will likewise be stated in the Class Notice.

This amount falls squarely in line with many other approved class settlements in the Sixth Circuit. When "awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

Here, all fees and costs awarded will be paid by Defendant and will not reduce the amount paid to the Class in any way.  As Plaintiff will further explain in her motion for attorneys' fees and costs, the requested fees and costs are appropriate.  To the extent the

Settlement Recovery is monetized, the requested fees and costs represent a reasonable percentage of 29% of the $343,000 Settlement Recovery made available under the Settlement (i.e., $99,500 ÷ [450 x 500 + $17,500 + $99,500 + $1,000] = 0.29). Or, if the Court decides this claims-made settlement does not create a true "common fund," the request is likewise appropriate under the lodestar approach. *See Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *34 (S.D. Ohio Apr. 4, 2014) (applying the lodestar method, and explaining that although "the percentage of the fund method is preferred in common fund cases, . . . this is not, however a common fund case because the provision for attorneys' fees . . . is independent of the award to the Class"), *report and recommendation adopted*, 2014 WL 3543819 (S.D. Ohio 2014), *aff'd*, 2016 WL 2802473 (6th Cir. 2016).

Plaintiff's counsel achieved an excellent result for the Class after undertaking substantial risk: a pure contingency basis. Plaintiff's counsel should be fairly compensated for pursuing this matter effectively in the face of that risk.

The service award is likewise consistent with awards from other class actions. *See Liberte Capital Grp. v. Capwill,* No. 5:99-cv-818, 2007 WL 2492461, at *1 (N.D. Ohio Aug. 29, 2007) ("Incentive awards, where appropriate, generally range from a few thousand dollars to $85,000"); Newberg § 17:8 (noting a 2006-2011 study that showed a median incentive award of $5,250).

## II.     THE SETTLEMENT SATISFIES RULE 23.

### A.     THE MEMBERS OF THE CLASS ARE SO NUMEROUS THAT JOINDER OF ALL OF THEM IS IMPRACTICABLE.

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[W]hile there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co*, 458 F.3d 549,

552 (6th Cir. 2006) (explaining that "(internal quotation marks omitted)).  Here, there are approximately 500 Class Members. Joinder, therefore, is impracticable, and the Class thus easily satisfies Rule 23's numerosity requirement.

### B. QUESTIONS OF LAW AND FACT ARE COMMON TO THE MEMBERS OF THE CLASS.

Rule 23(a) also requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This said, "there need only be one question common to the class, so long as the resolution of that question will advance the litigation." *Philips v. Philip Morris Cos. Inc.*, 298 F.R.D. 355, 363 (N.D. Ohio 2014) (internal quotation marks and alteration omitted).

Here, the claims of the members of the Class stem from the same factual circumstances— telephone calls sent by a single entity (AGAX Leads) to potential Allstate customers, in alleged violation of the TCPA.  Plaintiff asserts that common questions, therefore, include whether the messages violated the TCPA.  Consequently, the class satisfies Rule 23's commonality requirement.

### C. PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLAIMS OF THE MEMBERS OF THE CLASS SHE REPRESENTS.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of the class. Fed. R. Civ. P. 23(a)(3).  Typicality determines where the nature of the plaintiff's claims, judged from both a factual and legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 156-57 (1982).  A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citation omitted).

Plaintiff, like all Class Members, received a telephone call from AGAX Leads. Plaintiff brings a single legal claim—for violations of the TCPA—based on that singular factual predicate. Plaintiff thus asserts that the typicality requirement is met here.

**D.    THE QUESTIONS OF LAW AND FACT COMMON TO THE MEMBERS OF THE CLASS PREDOMINATE OVER ANY QUESTIONS POTENTIALLY AFFECTING ONLY INDIVIDUAL MEMBERS.**

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. Predominance is "readily met" in certain consumer cases. *See id.* at 625. The touchstone for predominance analysis is efficiency. It is not necessary that all questions of law or fact be common; only some questions must be common, and they must predominate over individual questions. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("The predominance inquiry asks whether common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.") (citation omitted). Rather, to satisfy the predominance requirement, "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject to individualized proof." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (internal quotation marks omitted).

Here, the central legal issues are whether Defendant is vicariously liable for AGAX Leads' calls, and whether Defendant can establish an affirmative defense of prior express consent. Plaintiff asserts that this is sufficient to satisfy the predominance requirement, as there are few individualized questions to be determined.

2255039.1

### E. A CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE METHODS FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CLAIMS OF PLAINTIFF AND THE CLASS.

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because Plaintiff seeks to certify a class in the context of a settlement, this Court need not consider any possible management-related problems as it otherwise would.  *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no individual member of the Class has an interest in controlling the prosecution of this action because Plaintiff's claims and the claims of the members of the Class are the same, and they are all relatively modest.  Plaintiff asserts that alternatives to a class action are either no recourse for hundreds of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice.

### III. THE PARTIES' NOTICE PLAN SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS REQUIREMENTS.

Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). The notice should

be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union*, 497 F.3d at 629-30 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Such notice of a proposed settlement to class members must be the "best notice [] practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). As the *LandAmerica* Court explained:

> For a binding settlement, the Court must direct the Plaintiffs to give notice in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e). Class members are entitled to know the terms of the agreement. Class members are entitled to a notice which clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Class members are also entitled to notice of the fees and costs being requested by class counsel and given an opportunity to object. Rule 23(h).

*In re LandAmerica 1031 Exch. Servs. Inc.,* MDL No. 2054, 2012 WL 13124593, at *7 (D.S.C. Jul. 12, 2012).

Here, the proposed notice program satisfies due process and Rule 23. *See* Ex. C (Long-Form Notice); Ex. D (Post Card Notice). The parties have agreed to a robust notice program involving direct mail notice to Class Members and a dedicated settlement website to be administered by a well-regarded third-party claims administrator— Angeion—which has significant experience in the administration of consumer class actions, including TCPA cases. As such, the notice plan complies with Rule 23 and due process because, *inter alia*, it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including

the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process to object to, or to be excluded from, the class, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for an award of attorneys' fees and expenses; and (6) how to make inquiries and obtain additional information. Fed. R. Civ. P. 23(c)(2)(B)

In sum, the parties' notice plan ensures that Class Members' due process rights are amply protected, and it should be approved. Fed. R. Civ. P. 23(c)(2)(A).

<u>CONCLUSION</u>

Plaintiff respectfully requests that this Court: (1) approve the parties' settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Plaintiff as the class representative, (3) appoint Plaintiff's counsel as class counsel, (4) approve the parties' proposed notice program, and confirm that it is the best practicable under the circumstances and that it satisfies due process and Rule 23, (5) set a date for a final approval hearing, (6) set deadlines for members of the settlement class to submit claims for compensation, and to object to or exclude themselves from the settlement, and (7) grant such further and other relief the Court deems reasonable and just.

Dated: June 25, 2021               By:  ___*/s/ Michael J. Boyle, Jr.*_____

MEYER WILSON CO., LPA
Matthew R. Wilson
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr.
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

- 20 -

2255039.1

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson*
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

\* Pro Hac Vice Pending

*Attorneys for Plaintiff and the Proposed Class*

## Certificate of Service

I hereby certify that on June 25, 2021 I served the foregoing to all counsel in this matter via ECF notification:

/s/ *Michael J. Boyle, Jr.*

One of the Attorneys for Plaintiff and the Class

- 21 -

2255039.1