**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MORGAN CARPENTER, on behalf of herself and others similarly situated, | CIVIL ACTION |
| Plaintiff, | |
| v. | Case No. 2:21-cv-3381-EAS-EPD |
| ALLSTATE INSURANCE COMPANY, | Judge: Edmund A. Sargus |
| Defendant. | Magistrate Judge Elizabeth P. Deavers |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AN**
**INCENTIVE AWARD**

Plaintiff Morgan Carpenter respectfully moves for the Court to: (1) award Class Counsel attorneys' fees and expenses in the amount of $99,500; and (2) grant an incentive award of $1,000 to the class representative. Both requests are reasonable, as evidenced by the attached declarations from Class Counsel and the authorities cited in the following memorandum of law.

Respectfully submitted,

Dated: Dec. 15, 2021

By:  */s/ Michael J. Boyle, Jr.*

MEYER WILSON CO., LPA
Matthew R. Wilson
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr.
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (admitted pro hac  vice)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008


*Attorneys for Plaintiff and the Proposed Class*

**TABLE OF CONTENTS**

Contents

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 1

ARGUMENT .............................................................................................................. 5

    I.      Class Counsel's requested fee award is reasonable and should be approved. ............. 5

        A.  The Court should apply the percentage method. .................................................. 5

        B.  Each of the *Ramey* factors support the requested fee award.................................. 7

    II.     The Court should also award Class Counsel a reimbursement for reasonable expenses advanced to the class—a request that is subsumed in the attorney's fee request. ........................................................................................................ 15

    III.   The requested incentive award is reasonable. ........................................................ 16

CONCLUSION.......................................................................................................... 17

CERTIFICATE OF SERVICE .................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.)*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................. 15

*Amos v. PPG Indus., Inc.*, No. 2:05-CV-70, 2019 U.S.Dist. LEXIS 139021 (S.D. Ohio Aug. 16, 2019) ....................................................................................... 9

*Bailey v. AK Steel Corp.*, 2008 U.S.Dist. LEXIS 18838 (S.D. Ohio Feb. 28, 2008) .................. 13

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ........................................................ 8

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) ................................................. 5

*Connectvity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 U.S.Dist. LEXIS 7829 (S.D. Ohio Jan. 26, 2011) ............................................................................. 6

*Cordoba v. DIRECTV, LLC*, Case No. 1:15-cv-3755-MHC, Dkt. No. 235 (N.D.Ga. Feb. 12, 2021) ........................................................................................... 14

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) ................................... 8

*Estate of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 U.S. Dist. LEXIS 92836 (S.D. Ohio May 17, 2021) ............................................................................. 7

*Estrada v. iYogi, Inc.*, No. 2:13-01989, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) .................. 8

*Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) ................... 5, 6, 8, 11

*Gentrup v. Renovo Servs., LLC*, Case No. 1:07-cv-430, 2011 U.S. Dist. LEXIS 67887 (S.D. Ohio June 24, 2011) ................................................................................ 11

*Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) ......................................... 7, 16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................ 7

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007) ................. 5, 6, 13

*In re DPL Inc. Sec. Litig.*, 307 F. Supp. 2d 947 (S.D. Ohio 2004) ................................. 5

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................... 15

*In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679 (N.D. Ohio 2015) ................. 8

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................. 15

*Johnson v. Midwest Logistics Sys.,* Case No. 2:11-cv-1061, 2013 U.S. Dist. LEXIS 74201 (S.D.Ohio May 24, 2013) .......................................................................... 16, 17

# TABLE OF AUTHORITIES
## (CONTINUED)

*Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2017 U.S. Dist. LEXIS 186830 (S.D. Ohio Nov. 13, 2017) .................................................................................. passim

*Linneman v. Vita-Mix Corp.*, 394 F. Supp.3d 771 (S.D. Ohio 2019) ........................................ 12

*Linneman v. Vita-Mix Corp.*, 970 F.3d 621 (6th Cir. 2020) ...................................................... 7

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) ................................ 12

*Lowther v. AK Steel Corp.*, No. 1:11-CV-877, 2012 U.S. Dist. LEXIS 181746 (S.D. Ohio Dec. 21, 2012) ............................................................................................................ 9, 11, 12, 13

*Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017) ............................................................................................................................... 8

*McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730 (6th Cir. 2002) ........................................... 13

*Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 WL 2838148 (S.D. Ohio June 30, 2017) .......... 9

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009) ...................................................... 5

*Mullins v. Data Mgmt. Co.*, No. 1:20-CV-214, 2021 U.S.Dist. LEXIS 124891 (S.D. Ohio June 21, 2021) ................................................................................................................... 7, 9

*Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711 (S.D. Ohio Jan. 18, 2019) ... 8

*Parchman v. SLM Corp.*, 896 F.3d 728 (6th Cir. 2018) ............................................................. 9

*Pierce v. Diversified Health Mgmt., Inc.*, No. 2:21-CV-02624, 2021 WL 4401437 (S.D. Ohio Sept. 27, 2021) ....................................................................................................................... 7

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974) ......................................... 5

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) ................................ 5

*Rikos v. Proctor & Gamble Co.*, No. 1:11-CV-226, 2018 U.S. Dist. LEXIS 72722 (S.D. Ohio Apr. 30, 2018) ................................................................................................................... 8, 15

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................................... 8

*U.S. ex rel. Ellison v. Visiting Physicians Ass'n, P.C.*, 2010 U.S.Dist. LEXIS 85160 (S.D. Ohio July 19, 2010) ....................................................................................................................... 12

*Wilkins v. HSBC Bank Nevada, N.A., et al.*, Case No. 3:12-cv-04010, 2015 U.S.Dist. LEXIS 23869 (N.D. Ill. Feb. 27, 2015) ............................................................................................ 15

## Statutes

47 U.S.C. § 227(a)(1) ................................................................................................................. 1

47 U.S.C. § 227(b)(1)(A) ........................................................................................................... 1

**TABLE OF AUTHORITIES**
**(CONTINUED)**

47 U.S.C. § 227(b)(3)(B) ........................................................................................... 8

**Other Authorities**

Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class Actions*, 89
    FORDHAM L. REV. 1151 (2021) ........................................................................ 6, 9

## INTRODUCTION

On October 1, 2021, this Court preliminarily approved a proposed class action settlement between Morgan Carpenter and Defendant Allstate Insurance Company ("Allstate"). Dkt. No. 12. The Settlement includes each person, like the Plaintiff, (i) to whom AGAX Leads made one or more calls (ii) for the purpose of encouraging the purchase of Allstate goods or services (iii) which call(s) were transferred to an Allstate agent(s) (iv) on or after September 23, 2016, up to October 1, 2021 (v) that originated from leads sold by Phoenix to Overstep. *See* Dkt. No. 4-1 ("Settlement Agreement"), at ¶ 3.1. Defendant's records reveal that there are approximately 500 telephone numbers that are encompassed by the Settlement Class. *Id.* at ¶ 2.9.

The settlement requires extraordinary injunctive and monetary relief. Allstate will no longer use the marketing entities that are implicated in this litigation, and each class member will be able to opt-out of receiving any future telemarketing calls from Allstate. Each class member who makes a valid claim under the settlement will receive $450—90% of the maximum statutory recover under the Telephone Consumer Protection Act ("TCPA"). *See* 47 U.S.C. § 227(a)(1), (b)(1)(A).

As compensation for their efforts, Class Counsel respectfully move the Court for an award of attorneys' fees and out-of-pocket expenses of $99,500, to be paid by Defendant. This request to reimburse Class Counsel for the fees and costs they expended on behalf of the Class over the past two years should be approved because: (1) it is well within the range of fee requests approved in similar cases and in this Court; (2) it is reasonable under the circumstances, and (3) it is less than Class Counsel's lodestar generated from investigating and settling the case. Class Counsel also respectfully move the Court for a modest incentive award of $1,000 to Plaintiff Morgan Carpenter as recognition of her work on behalf of the Class.

## BACKGROUND

**A.    This Case Has Been Investigated Extensively.**

Almost two years ago, on January 30, 2020, Plaintiff Morgan Carpenter's counsel sent a letter to Defendant informing it of her intention to pursue class action litigation against Defendant under the TCPA, on behalf of herself and all similarly situated persons.  Dkt. No. 4-2, Declaration of Matthew R. Wilson, at ¶ 10.  The parties then engaged in eight months of productive discussion, centered around a pre-filing mediation of claims on a class-wide basis. *Id.* at 11.  These discussions culminated on September 23, 2020 with the execution of the parties' Mediation Agreement and Schedule, which tolled the class claims, permitted pre-filing discovery, and provided for mediation.  *Id.*

Pursuant to this Mediation Agreement, Plaintiff served a comprehensive set of discovery requests, including requests that Defendant identify the number of calls placed by or on behalf of Allstate, the persons who received such calls, and its practices with regard to the National Do-Not-Call Registry.  *Id.* at 12.  In response, Defendant produced responsive data and pages of policy documents.  *Id.* at 13.

For its part, Defendant pursued formal and informal discovery of Plaintiff, including discovery exploring a potential prior express written consent defense.  Plaintiff provided Defendant with written responses, documents, and recordings of the calls at issue.

## A. The Proposed Settlement Resulted from Arm's-Length Negotiations Before a Highly Experienced and Respected Mediator.

After completing this discovery, the parties participated in a mediation.  They engaged the Honorable Morton Denlow (ret.) of JAMS in Chicago, Illinois, an experienced and well-respected mediator.  Wilson Decl., at ¶ 14.  The parties held a pre-mediation conference call with Judge Denlow on December 9, 2020, in which they discussed, among other things, their ongoing voluntary exchange of information to facilitate class settlement negotiations.  *Id.* at ¶ 15.  The parties thereafter submitted detailed mediation submissions to Judge Denlow setting forth their respective views as to the merits of their respective cases.  *Id.*

On January 25, 2021, the parties met for a Zoom video mediation session with Judge Denlow.  *Id.* at ¶ 16.  After a full day of arm's-length negotiations and after reaching impasse,

the parties accepted a mediator's proposal and signed a term sheet setting forth the material terms of the agreement. *Id.* The parties thereafter proceeded to negotiate the specific terms of the final Settlement Agreement over a period of five months until it was fully executed on June 8, 2021. *Id.* at ¶ 17.

Plaintiff is proud to have obtained meaningful discovery, worked through the complicated issues involved here, and negotiated a class settlement as advantageous as this one is for the class members, entirely before filing the case became necessary, and during the pandemic to boot.

**B.    The Settlement Provides Appropriate Relief to Settlement Class Members.**

**1.    The Settlement Class**

The Settlement Class is defined as "All persons in the United States (i) to whom AGAX Leads made one or more calls (ii) for the purpose of encouraging the purchase of Allstate goods or services (iii) which call(s) were transferred to an Allstate agent(s) (iv) on or after September 23, 2016, up to and including the date of the Preliminary Approval Order of the Settlement (v) that originated from leads sold by Phoenix to Overstep." Agreement, ¶ 3.1. Defendant's records reveal that approximately 500 telephone numbers meet the criteria set for inclusion in the Settlement Class set. *Id.*, ¶ 2.9

**2.    Injunctive Relief for Settlement Class Members.**

Defendant has agreed to take additional remedial measures agreed to by the parties to comply with the TCPA. Agreement, ¶ 4.1.1. First, Defendant shall place Overstep and Phoenix on a prohibited marketing vendor list that prohibits Allstate agents from knowingly doing business with those entities for marketing purposes for a period of not less than one year following execution of the Agreement. *Id.* Second, Defendant shall provide all Class Members with the option of putting themselves on Allstate's company-specific do-not-call list consistent with Allstate's do-not-call policy. *Id.* Plaintiff reasonably expects that this injunctive relief will end the calls to Class Members that formed the basis of this lawsuit.

### 3. Monetary Relief for Settlement Class Members

The Settlement requires Defendant to fund a payment of $450 for each class member who submits a claim form and separately to pay for all costs of Settlement Notice and Administrative Costs.  Agreement, ¶¶ 2.36, 2.36, 4.2.1.  The $450 amount represents 90% of the $500 in statutory damages available under the relevant TCPA provisions.  47 U.S.C. § 227(b)(3)(B) ("$500 in damages for each such violation"); 47 U.S.C. § 227(c)(5)(B) ("up to $500 in damages for each such violation").  Each Class Member who submits a valid Claim shall be entitled to receive this Settlement Relief.  Agreement, ¶ 4.2.4.[1]

### 4. Class Release

In exchange for the benefits allowed under the Settlement, Class Members who do not opt out will provide a release tailored to the practices at issue in this case.  Specifically, they will release only those claims "arising under the TCPA and/or any other federal or state telemarketing laws and/or regulations" that are connected to "AGAX making or causing to be made telemarketing calls promoting Allstate goods or services to the telephone numbers on the Class List."  Agreement, ¶ 2.27.

### 5. Settlement Administration and Class Notice

All costs of class notice and claims administration will be paid by Defendant as part of the Settlement Class Recovery.  Agreement, ¶ 2.36.  The Claims Administrator will be responsible for administering the Settlement in a cost-effective and timely manner, including by effectuating CAFA Notice, Mail Notice, Website Notice, the Settlement Website, and a Toll-Free Settlement Hotline; administering the Settlement Relief, and providing all other related support, reporting, and administration as provided in the Settlement Agreement.  *Id.*, ¶ 5.3, 6. The parties negotiated a hard cap such that Settlement administration and notice costs will not exceed $17,500.  Wilson Decl., at ¶ 18.  Pursuant to the Settlement, the Settlement Administrator

---

[1] If, after payments to Class Members have been made and the deadline for cashing checks has passed, the total amount of uncashed checks will be disbursed as cy pres to a non-profit approved by the Court. Agreement, ¶ 4.2.6.  The Parties agree to recommend the Lawyers' Committee for Civil Rights Under Law as the *cy pres* designee.  *Id.*

has provided notice to the class, and has established a Settlement Website to provide information for class members and a portal to make claims under the Settlement.

## ARGUMENT

### I. Class Counsel's requested fee award is reasonable and should be approved.

The Sixth Circuit "require[s] only that awards of attorney's fees be reasonable under the circumstances." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (internal quotation marks and citations omitted) (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). Courts apply a two-step analysis to determine a reasonable fee. "First, the Court must select a method by which to calculate the attorneys' fees—either the percentage approach or the lodestar approach." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007) (citing *In re DPL Inc. Sec. Litig.*, 307 F. Supp. 2d 947, 949–51 (S.D. Ohio 2004)). "Second, the Court must analyze and weigh the '*Ramey* factors" set forth in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), to develop an appropriate fee award using the calculation method selected." *Id.* In this case, the percentage method is appropriate, and each *Ramey* factor supports the requested fee.

### A. The Court should apply the percentage method.

"District courts have the discretion to select the particular method of calculation, but must articulate the reasons for adopting" either the lodestar or percentage method. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016) (internal quotation marks and citations omitted) (quoting *Moulton*, 581 F.3d at 352). In this case, the Court should adopt the percentage method.

"Under the percentage method, a court simply awards class counsel a reasonable percentage of the class settlement." *In re Cardinal Health*, 528 F. Supp. 2d at 762 (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)). This method "is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected

recovery; and it encourages early settlement, which avoid protracted litigation." *Gascho*, 822 F.3d at 280. It also spares district courts "from the costly task of scrutinizing counsel's billable orders." *In re Cardinal Health*, 528 F. Supp. 2d at 762. And "because the attorneys receive a higher fee if they obtain a higher settlement, the interests of the class and the attorneys are aligned." *Id.* Moreover, empirical data suggests that rational absent class members would prefer some form of the percentage method because it reduces monitoring costs. *See* Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class Actions*, 89 FORDHAM L. REV. 1151, 1163 (2021) ("[A]lthough more data is certainly needed, the data we have from sophisticated clients shows that they prefer the same arrangements that unsophisticated clients do: the percentage method with fixed percentages of one-third or escalating percentages as the litigation matures.").

Under the lodestar approach, by contrast, "the trial court first scrutinizes the fee petition to ascertain the number of hours Lead Counsel reasonably expended in creating, protecting, or preserving the fund recovered, and then multiplies the number by a reasonable hourly rate for the attorneys' services to produce a 'lodestar' figure," which the court may adjust upward or downward with a multiplier. *In re Cardinal Health*, 528 F. Supp. 2d at 761. This approach is time-consuming for district courts and introduces negative incentives for attorneys. *See id.* at 761–62. And it is not supported by the preferences of actual clients in contingency fee litigation. *See* Fitzpatrick, *supra* at 1153 ("No one—not even the most sophisticated client—appears to use the contingent-lodestar-plus-percentage formula.").

Consequently, "[i]n the Southern District of Ohio, the preferred method is 'to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.'" *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2017 U.S. Dist. LEXIS 186830, at *14 (S.D. Ohio Nov. 13, 2017) (quoting *Connectvity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 U.S.Dist. LEXIS 7829, at *34 (S.D. Ohio Jan. 26, 2011)). Therefore, courts in this district generally apply the percentage method "absent compelling reasons to the contrary." *Mullins v. Data Mgmt. Co.*, No. 1:20-CV-214, 2021 U.S.Dist. LEXIS 124891, at *6

(S.D. Ohio June 21, 2021) (quoting *Estate of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 U.S. Dist. LEXIS 92836, at *15 (S.D. Ohio May 17, 2021) (internal quotation marks and citations omitted)); *see also Hainey v. Parrott*, 617 F. Supp. 2d 668, 677 (S.D. Ohio 2007) (noting that the Sixth Circuit "seemingly expressed a preference for the percentage of the fund method"). This Court should follow the longstanding preference in this district and apply the percentage method.

### B. Each of the *Ramey* factors support the requested fee award.

Six non-dispositive factors guide courts' analysis of whether a requested fee is reasonable: "1) the value of the benefit rendered, 2) society's stake in rewarding attorneys who produce such benefits to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides." *Pierce v. Diversified Health Mgmt., Inc.*, No. 2:21-CV-02624, 2021 WL 4401437, at *2 (S.D. Ohio Sept. 27, 2021) (Sargus, J.) (citing *Ramey*, 508 F.2d at 1196); *accord Gascho*, 822 F.3d at 280 (quoting *Moulton*, 581 F.3d at 352). Each factor supports approval in this case.

### 1. Class Counsel conferred a substantial benefit on the Class.

The value of a settlement to the class is "the most critical factor" for assessing whether a fee is reasonable. *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 633 (6th Cir. 2020) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The analysis is comparative—that is, "courts must calculate the ratio between attorney's fees and benefit to the class" where "[a]ttorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Gascho*, 822 F.3d at 282. The settlement agreement in this case provides substantial benefits to the Class, which supports the reasonableness of Class Counsel's fee petition.

Start with the denominator—the benefit to the class. "To determine the amount of the benefit conferred, courts look to the total amount made available to the class, rather than the amount ultimately claimed by class members." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *11 (S.D. Ohio Jan. 18, 2019) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480–81 (1980)). Reasonable litigation expenses and settlement administration costs incurred by Class Counsel also count as benefits. *Rikos v. Proctor & Gamble Co.*, No. 1:11-CV-226, 2018 U.S. Dist. LEXIS 72722, at *22 (S.D. Ohio Apr. 30, 2018) (quoting *Gascho*, 822 F.3d at 282).

Here, the settlement "makes available" $450 to every single one of the 500 class members who files a claim—a total of $225,000 in potential compensation. The vast majority of class members received only one allegedly unlawful call, so this represents about 90% of class members' total damages. *See* 47 U.S.C. § 227(b)(3)(B) (providing $500 in statutory damages per unlawful call).[2] Courts have approved TCPA settlements providing far less relief.[3] Add to those cash payments an additional $99,500 for class counsel's fee and $17,500 for settlement administration, and the total benefit conferred on the Class is $342,000.[4]

---

[2] Although the TCPA does provide for treble damages if the defendant's violations were willful or knowing, 47 U.S.C. § 227(b)(3)(C), courts generally determine the value of the settlement without reference to treble damages, *see, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, (N.D. Ohio 2015) (citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009)).

[3] *See, e.g.*, *Estrada v. iYogi, Inc.*, No. 2:13-01989, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members would receive an estimated $40); *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044-45 (S.D. Cal. 2015) (approving TCPA settlement in which class members received $13.75 each, noting that such a figure "appears to be on the low end of monetary recovery for TCPA class action settlements").

[4] It is also worth noting that the settlement provides for meaningful injunctive relief. Allstate has agreed not to knowingly do business with two of its former vendors for a period of one year. *See* Agreement § 4.1.1. And all class members will have the option to put themselves on Allstate's internal do-not-call list. *Id.* Class Counsel has not attempted to quantify the value of that relief, but it does provide the Class with additional benefits.

Now compare those benefits to the numerator—Class Counsel's requested costs and fees of $99,500. That request is equal to 29.1% of the benefit conferred on the class,[5] which falls well within the range of fee awards approved in this district. *See, e.g.*, *Mullins v. Data Mgmt. Co.*, 2021 U.S.Dist. LEXIS 124891, at *17 ("Many courts in the Sixth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund is reasonable."); *Amos v. PPG Indus., Inc.*, No. 2:05-CV-70, 2019 U.S.Dist. LEXIS 139021, at *36 (S.D. Ohio Aug. 16, 2019) ("Typically, courts award attorneys' fees in an amount equaling between 20% and 50% of the total amount of the common fund."); *see also* Fitzpatrick, *supra* at 1168 ("If judges want to be good fiduciaries for absent class members, then they should probably presume that one-third is the correct fixed percentage, not one-fourth."). And not a single class member has objected, which suggests they are satisfied with Class Counsel's proposed fee in comparison to the benefits they stand to receive. *See Lowther v. AK Steel Corp.*, No. 1:11-CV-877, 2012 U.S. Dist. LEXIS 181476, at *12 (S.D. Ohio Dec. 21, 2012) ("The lack of objections is strong evidence of the acceptability of a fee request."). Therefore, the first factor weighs in favor of the requested fee.

### 2. Society has a significant interest in rewarding Class Counsel.

"[T]here is a benefit to society in ensuring that small claimants may pool their claims and resources, and attorneys who take on class action cases enable this." *Kimber Baldwin*, 2017 U.S. Dist. LEXIS 186830, at *15 (citing *Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017)). This is particularly true of the TCPA, which was enacted "to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018). Here, Class Counsel obtained monetary and injunctive relief on behalf of 450 individuals. Without this lawsuit, many of these individuals would not have had the resources to pursue their claims, or even known that they had viable legal claims.

---

[5] $99,500 ÷ [($450 X 500) + $99,500 + $17,500] = 0.2909

*See Kimber Baldwin*, 2017 U.S. Dist. LEXIS 186830, at ** 15-16 ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own.")  Accordingly, this factor supports the requested fees.

### 3. Class Counsel provided their services on a contingent basis and thus faced a real risk of non-payment.

Despite the risks associated with prosecuting this case, including issues related to certification and various liability defenses asserted by Defendants, Class Counsel took this case solely on a contingency fee basis and were prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  Wilson Supp. Dec., at ¶ 3; Hutchinson Dec., at ¶¶ 18-22.  Importantly, at the time Plaintiffs filed their Complaints, there were no obvious indications that a settlement would be reached or that the litigation would be successful.  In addition, the initial investigation of this case started over two years ago.  Wilson Decl., ¶ 9.  Thus, Class Counsel have incurred significant delay in receiving any payment, and as set forth in their Declarations incurred over $9,000 in direct litigation related expenses to achieve this result.

Collectively, Class Counsel devoted approximately 225.3 hours to litigating and resolving this case.  Wilson Supplemental Decl., at ¶ 8; Hutchinson Decl., at ¶ 24.  Specifically, Class Counsel spent these 225.3 hours performing tasks that were integral to the successful prosecution and resolution of this matter, and include the following: (1) initially investigated potential claims; (2) drafted the Complaints; (3) responded to Defendant's discovery responses; (4) drafted and served discovery requests on Defendant; (5) reviewed significant discovery produced by Defendant; (6) prepared a detailed mediation brief analyzing the facts, law, and damages in this case based on that information; (7) attended a full-day mediation; (8) worked with potential settlement administrators; (9) drafted, edited, and filed the Settlement Agreement with exhibits and settlement approval papers; and (10) communicated with Class Members during the settlement notice period to answer questions about the settlement.

Further, to date no class member has objected to this fee request in particular, or to the settlement in general. *See Lowther*, 2012 WL 6676131, at *12 ("The lack of objections is strong evidence of the acceptability of a fee request.").

Finally, Class Counsel have not been compensated for any time or expense since the litigation began, consistent with the fee agreement entered into between Plaintiff and Class Counsel. This factor thus weighs in favor of awarding the requested fee. *See Gentrup v. Renovo Servs., LLC*, Case No. 1:07-cv-430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) (finding that plaintiffs' counsel had made "significant investments of time and [had] advanced costs but [had] received no compensation in this matter" weighed in favor of the requested fee).

### 4. Class Counsel is seeking less than their total lodestar, which confirms the reasonableness of their request.

Class Counsel's request is also supported by a lodestar cross-check. "Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate," which it then compares to the requested fee. *Kimber Baldwin*, 2017 U.S. Dist. LEXIS 186830, at *16 (citing *Gascho*, 822 F.3d at 279).

After reducing the overall lodestar incurred based on the exercise of billing judgment to eliminate redundancies, Class Counsel's work has resulted in a lodestar amount of approximately $133,957.50 based on approximately 225.3 hours dedicated to litigating and resolving Plaintiffs' and class members' claims through mid-December 2021, with more time to be incurred up to, and even after, the final approval hearing in April. Wilson Supp. Decl. at ¶ 8; Hutchinson Decl, at ¶ 24. Notably, the lodestar does not include time that Class Counsel will spend preparing for, traveling to (if necessary), and attending the Fairness Hearing, additional time they will spend during the administration of the settlement, or much of the time expended in preparing and filing this motion and the motion for final approval. Thus, even this lodestar figure does not fully capture all the time Class Counsel will have spent in successfully resolving this action.

Class Counsel's total lodestar is considerably *more than* the fees they request here.  This is, therefore, a so-called "negative multiplier"[6] situation.  In such cases, and given the limited nature of the lodestar crosscheck when fees are sought on a percentage-of-the-fund basis, the Court need not engage in a detailed inquiry into rate charged or the time expended.  That is especially so here, where the rates are supported by the market and are consistent with other fee awards both in this District and nationally.  *See, e.g., Linneman v. Vita-Mix Corp.*, 394 F. Supp.3d 771, 783-84 (S.D. Ohio 2019) (in a recent class action that involved no true common fund, nevertheless still approving rates of $550 for senior attorneys and $489 for attorneys with 11-20 years of experience); *Lowther*, 2012 U.S.Dist. LEXIS 181476, at *17 (applying a lodestar cross-check analysis for class action and concluding that $500 was a reasonable rate for two senior attorneys); *U.S. ex rel. Ellison v. Visiting Physicians Ass'n, P.C.*, 2010 U.S.Dist. LEXIS 85160, at *3-8 (S.D. Ohio July 19, 2010) (approving fees over objections in 2010 complex qui tam case of $425-$498 per hour); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 794 (N.D. Ohio 2010) (in another ten-year-old case, approving attorney rates ranging from $325-$650 and paralegal rates of $90, $150-$215 in complex class action because "the requested rates are reasonable for this case considering the experience and expertise these particular lawyers have in this particular area of law.")

Based on their extensive experience litigating collective and class actions, Class Counsel were able to litigate and settle the claims more efficiently than counsel with less experience.

First, the amount of time each law firm spent on the case is reasonable.  This is a complex case involving multiple areas of law and novel complex factual and legal questions.

Second, the billing rates used to calculate the lodestar are reasonable as well.  Courts look to the prevailing market rates in the relevant community to determine the reasonableness of the rates.  *Lowther*, 2012 U.S.Dist. LEXIS 181476, at *13.  In ascertaining the proper "community," district courts may "look to national markets, an area of specialization, or any other market they

---

[6] Although cases have often referred to it as a negative multiplier, it is more accurately deemed a *fractional* multiplier, because the fees sought by Class Counsel are a fraction of their lodestar.

believe is appropriate to fairly compensate attorneys in individual cases." *Id*. (quoting *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002)). Further, determining the "prevailing market rates in the relevant community …involves consideration of experience, specialization, effort, and performance, and setting rates sufficient to ensure that class counsel are fairly compensated for the amount of work done and the results achieved." *Id*. (citation omitted).

Class Counsel's rates should be approved considering the complexity of class action litigation, Class Counsel's extensive experience in this particular area, awards by other courts, the fact such rates are used by several of the firms' non-contingent hourly rate paying clients, and the excellent recovery for the participating class members that resulted from such expertise. The firms here are experienced and specialized class action lawyers throughout the United States with industry-leading experience with TCPA cases, and district courts throughout the country have approved their rates. Wilson Supp. Decl. at ¶ 4; Hutchinson Decl, at ¶ 29.

Third, Class Counsel's cumulative lodestar of $133,957.50 compared to its requested fee of $99,500 yields a lodestar multiplier of 0.74, which is far lower than other risk multipliers approved in complex class actions in this Circuit. *See, e.g., Lowther*, 2012 U.S.Dist. LEXIS 181476, at *17 (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (3.06 multiplier)); *Bailey v. AK Steel Corp.*, 2008 U.S.Dist. LEXIS 18838, at * 8 (S.D. Ohio Feb. 28, 2008) ("[M]ultiplier [of 3.04] is fully warranted given the complexity of the case, the attendant risks, the size of the settlement recovered, and class counsels' continuing obligations to the class, and it is well within the range of multipliers awarded in similar litigation."); *In re Cardinal Health*, 528 F. Supp. 2d at 767 (lodestar multiplier of 6.0, noting that the typical lodestar multiplier in large class actions "ranges from 1.3 to 4.5").

Thus, the lodestar analysis confirms the percentage requested is reasonable. Given the significant recovery to the Class Members, substantial risks and delays in payment in litigating this case, the complexity of the issues involved, Class Counsel's continued obligations to the

Class Members, and the fact that the fee requested asks for no multiplier at all, the lodestar cross-check supports the requested fee award.

### 5.     This litigation was complex.

TCPA class cases are complex and difficult matters for plaintiff's side counsel to litigate. While the matter was able to be resolved relatively early in the litigation, this early resolution was driven by knowledge on both sides of the complexities of this type of litigation.  While Plaintiff and her counsel believe strongly in the ultimate success of their claims on the merits, they recognize the Defendant has some viable and potentially case-dispositive defenses.

For example, Defendant argued that it had viable consent defenses as to some or all members of the class.  The litigation of those issues would involve complex analysis of the records maintained by lead generation entities, entities that are at least two levels removed from Allstate itself.  Allstate has argued, and would likely continue to argue, that ambiguities regarding the nature of those records would have made it difficult or impossible for the Court to resolve the claims of all class members in a single proceeding.  Moreover, the levels of remove between the lead generators and Allstate allows Allstate to argue that it is not vicariously liable for the calls made by the lead generators and their agents.  This argument has had success in other contexts.  *See, e.g., Cordoba v. DIRECTV, LLC*, Case No. 1:15-cv-3755-MHC, Dkt. No. 235 (N.D.Ga. Feb. 12, 2021) (granting summary judgment to defendant in a TCPA telemarketing case on vicarious liability).

In sum, these cases are difficult, and it takes experienced counsel to navigate claims through the process of resolution.  This fact supports Plaintiff's counsel's requested fees.

### 6.     This case was litigated by skilled and professional counsel.

Class counsel in this case consist of two firms: Lieff Cabraser Heimann & Bernstein, LLP, and Meyer Wilson Co., LPA.  Lieff Cabraser is one of the largest full-service plaintiff-side law firms in the country, with expertise in a wide variety of subject areas.  Hutchinson Dec., at ¶ 8.  Meyer Wilson is a plaintiffs' class action firm, having successfully litigated dozens of class

actions all over the country.  Wilson Decl., at ¶ 4.  Together, Lieff Cabraser and Meyer Wilson have been at the forefront of TCPA class action litigation, having collaborated on several of the largest settlements in the statute's 30 year history.  *See, e.g., Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.)*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (granting final approval to an over $75 million TCPA settlement with more than 17 million class members); *Wilkins v. HSBC Bank Nevada, N.A., et al.*, Case No. 3:12-cv-04010, 2015 U.S.Dist. LEXIS 23869, at ** 11-12 (N.D. Ill. Feb. 27, 2015) (granting final approval of a $39.975 million TCPA settlement with 9 million class members).

In sum, Plaintiff's counsel in this case are the most experienced TCPA class action attorneys in the country, with a long track record of successful TCPA settlements of every scale and scope.  This fact supports Plaintiff's fee request.

## II. The Court should also award Class Counsel a reimbursement for reasonable expenses advanced to the class—a request that is subsumed in the attorney's fee request.

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003). Here, Class Counsel incurred reasonable costs and expenses in connection with this matter, including mediation costs, travel expenses, filing and *pro hac vice* fees, and similar necessary expenses of the type routinely charged to paying clients.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *Kimber Baldwin,* 2017 U.S. Dist. LEXIS 186830, at * 18 (approving litigation expenses); *Rikos,* 2018 U.S. Dist. LEXIS 72722, at ** 27-28 (approving over $360,000 in expenses for "filing fees, travel to depositions and hearings, expert costs,

electronic discovery, deposition transcripts, videography and court reporter fees, mediator fees, research, postage, and telephone charges.").

Counsel together expended a total of $9,027.44 in costs as of the filing of this motion, and counsel anticipate incurring additional costs associated with the final approval and disposition of the settlement. Despite being entitled to such costs *in addition to* fees as set forth above, Counsel have elected to subsume those costs into a single award of fees and costs, and they do not seek additional reimbursement for those costs.

This Court, therefore, should approve Class Counsel's subsumed request for reimbursement of costs and expenses.

## III.    The requested incentive award is reasonable.

Plaintiffs request that the Court award $1,000 to the named Plaintiff, Morgan Carpenter. The Settlement Notices informed Class Members that Class Counsel would request awards in these amounts for the Plaintiffs, and not one Class Member has so far objected to the request. Likewise, Defendants do not oppose the award of the requested service awards.

Courts in this District have approved such awards for class representatives after consideration of several factors, including their actions to protect the rights of the class members and whether those actions resulted in a substantial benefit to the class members, whether the class representative assumed any direct or indirect financial risk, and the amount of time and effort spent pursuing the litigation. *Johnson v. Midwest Logistics Sys.,* Case No. 2:11-cv-1061, 2013 U.S. Dist. LEXIS 74201, at *13 (S.D.Ohio May 24, 2013) (citing *Hainey v. Parrott*, 617 F. Supp. 2d at 677).

Additionally, any award approved by the Court would be paid by Defendant on top of the awards to class members, and so the granting of an incentive award would not reduce class member recovery. These payments also advance public policy by encouraging individuals to come forward and protect the rights of others in representative actions such as this one. Finally, the requested awards are in line with, or smaller than, those previously approved in similar cases.

*See e.g., Kimber Baldwin,* 2017 U.S. Dist. LEXIS 186830, at \*\* 18-19 (approving an award of $5,000 to the named plaintiff in a $450,000 settlement fund); *Johnson,* 2013 U.S. Dist. LEXIS 74201, at \*5 (approving $12,500 award to the named plaintiff from a $452,380 settlement).  As such, the requested awards should be approved.

## CONCLUSION

For the above reasons, Plaintiff requests that the Court: (1) award Class Counsel attorneys' fees and expenses in the amount of $99,500; and (2) grant an incentive award of $1,000 to the class representative.

Dated: Dec. 15, 2021

By:  */s/ Michael J. Boyle, Jr.*

MEYER WILSON CO., LPA
Matthew R. Wilson
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr.
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (admitted pro hac vice)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing to all counsel in this matter via ECF notification on Dec. 15, 2021.

/s/  *Michael J. Boyle, Jr.*