**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MORGAN CARPENTER, on behalf of herself and others similarly situated, | CIVIL ACTION |
| Plaintiff, | |
| v. | Case No. 2:21-cv-3381-EAS-EPD |
| ALLSTATE INSURANCE COMPANY, | Judge: Edmund A. Sargus |
| Defendant. | Magistrate Judge Elizabeth P. Deavers |

**<u>PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

SUMMARY OF THE PROPOSED SETTLEMENT ....................................................... 1

    A.    THE SETTLEMENT CLASS ............................................................................. 1

    B.    INJUNCTIVE RELIEF FOR SETTLEMENT CLASS MEMBERS. ................. 2

    C.    MONETARY RELIEF FOR sETTLEMENT CLASS MEMBERS. .................... 2

    D.    CLASS RELEASE ............................................................................................. 3

REACTION TO THE SETTLEMENT ............................................................................. 3

ARGUMENT ...................................................................................................................... 4

I.    THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE,
AND ADEQUATE UNDER RULE 23(e)(2) .................................................................... 4

    A.    The Class Representative and Class Counsel Have Adequately
Represented the Class. ........................................................................................ 5

    B.    The settlement was negotiated at arm's-length by vigorous advocates, and
there has been no fraud or collusion. .................................................................. 7

    C.    The Settlement Provides Substantial Relief for the Class ................................... 8

        1.    Diverse and substantial legal risks weigh in favor of settlement ............... 8

        2.    The monetary terms of this proposed settlement fall within the
range of prior TCPA class action settlements ........................................... 9

        3.    The award of attorneys' fees and incentive awards is fair and
reasonable. ................................................................................................. 10

    D.    The method of providing relief is effective and treats all members of the
Class fairly. ...................................................................................................... 11

II.    THE SETTLEMENT SATISFIES RULE 23. ............................................................ 12

    A.    The members of the Class are so numerous that joinder of all of them is
impracticable ..................................................................................................... 12

    B.    Questions of law and fact are common to the members of the Class. ................ 13

    C.    Plaintiff's claims are typical of the claims of the members of the Class She
represents. ........................................................................................................ 13

    D.    The questions of law and fact common to the members of the Class
predominate over any questions potentially affecting only individual
members ............................................................................................................ 14

**TABLE OF CONTENTS**
**(continued)**

**Page**

E.     A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the Class. ........................... 14

III.    THE PARTIES' NOTICE PLAN SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS REQUIREMENTS. .................................................. 15

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abante Rooter & Plumbing v. Pivotal Payments,*
  Case No. 3:16-cv-05486-JCS, 2018 U.S.Dist. LEXIS 232054 (N.D.Cal. Oct. 15, 2018)......... 16

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997)............................................................................................................ 4, 14, 15

*Baptista v. Mut. of Omaha Ins. Co.,*
  859 F. Supp. 2d 236 (D.R.I. 2012)................................................................................................ 6, 7

*Beattie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) ............................................................................................................ 14

*Brent v. Midland Funding, LLC,*
  No. 3:11-cv-1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) ............................................ 4

*Couser v. Comenity Bank,*
  125 F. Supp. 3d 1034 (S.D. Cal. 2015).............................................................................. 10, 16

*Daffin v. Ford Motor Co,*
  458 F.3d 549 (6th Cir. 2006) ............................................................................................................ 12

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974).......................................................................................................................... 16

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.,*
  137 F.R.D. 240, 244 (S.D. Ohio 1991) .......................................................................................... 6

*Estrada v. iYogi, Inc.,*
  No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015)............................ 10

*Farnham v. Caribou Coffee Co.,*
  Case No. 16-cv-295-WMC, 2017 U.S.Dist. LEXIS 214929 (W.D.Wisc. Dec. 15, 2017)........ 16

*Gascho v. Global Fitness Holdings, LLC,*
  No. 14-3761, 2016 WL 2802472 (6th Cir. May 13, 2016).................................................... 11

*Gen. Tel. Co. of the Sw. v. Falcon,*
  457 U.S. 147 (1982).......................................................................................................................... 13

*Grady v. de Ville Motor Hotel, Inc.,*
  415 F.2d 449 (10th Cir. 1969) ........................................................................................................ 10

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ........................................................................................................ 10

*Ikuseghan v. Multicare Health Sys.,*
  No. 3:14-CV-05539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016)............................ 9

*In re Am. Med. Sys., Inc.,*
  75 F.3d 1069 (6th Cir. 1996) ........................................................................................................ 13

*In re AOL Time Warner ERISA Litig.,*
  Case No. 02-cv-8853, 2006 WL 2789862, at *7 (S.D.N.Y. Sept. 27, 2006)............................ 6

*In re Inter-Op Hip Prosthesis Liab. Litig.,*
  204 F.R.D. 330 (N.D. Ohio 2001) ............................................................................................ 6

## TABLE OF AUTHORITIES
### (continued)

Page

*Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ........................................................................ 5, 15
*Izor v. Abacus Data Sys.*,
  Case No. 19-cv-01057-HSG, 2020 U.S.Dist. LEXIS 239999 (N.D.Cal. Dec. 21, 2020).......... 16
*Levell v. Monsanto Research Corp.*,
  191 F.R.D. 543 (S.D. Ohio 2000) ............................................................................ 9
*Liberte Capital Grp. v. Capwill*,
  No. 5:99-cv-818, 2007 WL 2492461 (N.D. Ohio Aug. 29, 2007).......................................... 11
*Markos v. Wells Fargo Bank, N.A.*,
  No. 1:15-cv-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017).................................... 10
*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950).................................................................................................. 15
*Philips v. Philip Morris Cos. Inc.*,
  298 F.R.D. 355 (N.D. Ohio 2014) ............................................................................ 13
*Priddy v. Edelman*,
  883 F.2d 438 (6th Cir. 1989) .................................................................................... 7
*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ...................................................................................... 11
*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016)............................................................................................ 14
*Vassalle v. Midland Funding LLC*,
  708 F.3d 747 (6th Cir. 2013) .................................................................................... 4
*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) .................................................................................... 9

**Statutes**
Fed. R. Civ. P. 23(a) .............................................................................................. 12, 13
Fed. R. Civ. P. 23(a)(1)............................................................................................ 12
Fed. R. Civ. P. 23(a)(2)............................................................................................ 13
Fed. R. Civ. P. 23(a)(3)............................................................................................ 13
Fed. R. Civ. P. 23(a)(4)............................................................................................ 6
Fed. R. Civ. P. 23(b)(3)........................................................................................ 14, 15
Fed. R. Civ. P. 23(b)(3)(D)........................................................................................ 15
Fed. R. Civ. P. 23(c)(2)(A)........................................................................................ 16
Fed. R. Civ. P. 23(c)(2)(B)................................................................................... 15, 16
Fed. R. Civ. P. 23(c)(2)(C)(iii).................................................................................. 10
Fed. R. Civ. P. 23(e) ................................................................................................ 4
Fed. R. Civ. P. 23(e)(1).......................................................................................... 1, 15
Fed. R. Civ. P. 23(e)(2).............................................................................................. 1
Fed. R. Civ. P. 23(e)(2)(C)(ii).................................................................................. 11

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Rules**
Rubenstein, Newberg on Class Actions (5th ed. 2015) ........................................................ 5, 7, 11

**Treatises**
McLaughlin on Class Actions (8th ed. 2011) .............................................................................. 7

## INTRODUCTION

Plaintiff Morgan Carpenter hereby moves the Court for final approval of the Class Settlement with Allstate Insurance Company ("Defendant"). On October 1, 2021, the Court granted preliminary approval of the settlement, finding on a provisional basis that it "will likely be able to" (1) approve the proposed Settlement, based on whether the proposed Settlement Class representative and proposed Class Counsel "have adequately represented the class," and whether the Settlement "was negotiated at arm's length," provides "adequate" relief for the Settlement Class, and treats Settlement Class Members "equitably relative to each other"; and (2) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1) & (2). *See also* Dkt. No. 12 (granting preliminary approval). The Court also ordered notice to be issued to class members. On March 1, 2022, the Parties jointly moved the Court for a second round of notice in light of unexpected issues with mailing of notice. *See* Dkt. No. 16. Plaintiff is pleased to report that this second round of notice has resulted in a claims rate of 10.4%, with no objections or opt-outs. *See* Ex. B, Declaration of Ryan Chumley, at ¶ 18.

In light of these results, Plaintiff submits that final approval of the settlement should be granted.

## SUMMARY OF THE PROPOSED SETTLEMENT

The Settlement's details are contained in the Agreement signed by the parties, a copy of which was filed with the Court at Dkt. No. 4-1. The following summarizes the Agreement's terms:

**A.     THE SETTLEMENT CLASS.**

The Settlement Class is defined as "All persons in the United States (i) to whom AGAX Leads made one or more calls (ii) for the purpose of encouraging the purchase of Allstate goods or services (iii) which call(s) were transferred to an Allstate agent(s) (iv) on or after September

23, 2016, up to and including the date of the Preliminary Approval Order of the Settlement (v) that originated from leads sold by Phoenix to Overstep." Agreement, ¶ 3.1. Defendant's records reveal that approximately 500 telephone numbers meet the criteria set for inclusion in the Settlement Class set. *Id.*, ¶ 2.9.

**B.    INJUNCTIVE RELIEF FOR SETTLEMENT CLASS MEMBERS.**

Defendant has agreed to take additional remedial measures to comply with the TCPA. Agreement, ¶ 4.1.1. First, Defendant placed Overstep and Phoenix on a prohibited marketing vendor list that prohibits Allstate agents from knowingly doing business with those entities for marketing purposes for a period of not less than one year following execution of the Agreement. *Id.* Second, Defendant provided all Class Members with the option of putting themselves on Allstate's company-specific do-not-call list consistent with Allstate's do-not-call policy. *Id.* Plaintiff reasonably expects that this injunctive relief will end the calls to Class Members that formed the basis of this lawsuit.

**C.    MONETARY RELIEF FOR SETTLEMENT CLASS MEMBERS.**

The Settlement requires Defendant to fund a payment of $450 for each class member who submits a claim form and separately to pay for all costs of Settlement Notice and Administrative Costs. Agreement, ¶¶ 2.36, 2.36, 4.2.1. The $450 amount represents 90% of the $500 in statutory damages available under the relevant TCPA provisions. 47 U.S.C. § 227(b)(3)(B) ("$500 in damages for each such violation"); 47 U.S.C. § 227(c)(5)(B) ("up to $500 in damages for each such violation"). Each Class Member who submits a valid Claim shall be entitled to receive this Settlement Relief. Agreement, ¶ 4.2.4.[1]

---

[1] If, after payments to Class Members have been made and the deadline for cashing checks has passed, the total amount of uncashed checks will be disbursed as cy pres to a non-profit approved by the Court. Agreement, ¶ 4.2.6. The Parties agree to recommend the Lawyers' Committee for Civil Rights Under Law as the *cy pres* designee. *Id.*

**D.    CLASS RELEASE.**

In exchange for the benefits allowed under the Settlement, Class Members who do not opt out will provide a release tailored to the practices at issue in this case.  Specifically, they will release only those claims "arising under the TCPA and/or any other federal or state telemarketing laws and/or regulations" that are connected to "AGAX making or causing to be made telemarketing calls promoting Allstate goods or services to the telephone numbers on the Class List."  Agreement, ¶ 2.27.

## REACTION TO THE SETTLEMENT

As the Court is aware, there was originally a problem with the distribution of notice, as seen in the fact that (1) no valid claims had been received; and (2) the named class member did not receive notice.  Dkt. No. 16, at 2.  In that light, the Parties sought, and the Court approved, a second round of notice to class members.  *See* Dkt. No. 18.

This supplemental notice program was successful, as demonstrated in several ways. First, Angeion sent "dummy notices" to Plaintiff's counsel as part of the notice package, and Plaintiff's counsel received this notice within days of the notice being mailed.  Second, unlike the first round of notice, Angeion received 52 valid claims, which represents a 10.4% claims rate. *See* Ex. B, Declaration of Chumley, at ¶ 18.  As with the first round of notice, Angeion also received a significant number of invalid claims—more specifically, claims from individuals whose telephone numbers reported on the claim form did not match the telephone numbers encompassed by the settlement.[2]

---

[2] Neither Plaintiffs' counsel nor Angeion have a complete explanation for the large number of invalid claims.  However, Plaintiffs' counsel is aware that this settlement was posted on at least one website that discusses pending class settlements, and that website presented the settlement as encompassing "Allstate telemarketing calls" without limitation.  This is incorrect, as the settlement only encompasses a discrete set of calls from a particular telemarketer.  Thus, Plaintiff's counsel's best explanation is that the invalid claims come from individuals who

No class member objected to the settlement or opted-out. Ex. B, Declaration of Chumley, at ¶¶ 19-20.

## ARGUMENT

### I. THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)(2)

Where parties propose to resolve class action litigation through settlement, they must obtain court approval. Fed. R. Civ. P. 23(e); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013). "The inquiry appropriate under Rule 23(e) . . . protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997) (internal quotation marks and citations omitted). Courts typically grant preliminary approval "where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." Newberg § 13:10 (citation omitted); *see also Williams*, 720 F.2d at 921 (noting that the preliminary approval inquiry asks "whether the compromise . . . is illegal or tainted with collusion"); *Brent v. Midland Funding, LLC*, No. 3:11-cv-1332, 2011 WL 3862363, at *6 (N.D. Ohio Sept. 1, 2011) (noting that "[t]he Court granted the motion for preliminary approval" after "finding that the settlement was within the range of fairness and reasonableness").

When a court certifies a class at the same time as approving a settlement, the court must find the four prerequisites of Rule 23(a) satisfied, as well as one of the requirements of one of the three categories under Rule 23(b). Where, as here, the proposed Settlement would bind Class members, the Court may approve the Settlement after a conducting a hearing and finding that the

---

received calls that they believe are Allstate telemarketing from other sources, saw the notice on the class action settlement website, and then attempted to make a claim.

2255039.1

Settlement is "fair, reasonable, and adequate," based on the following factors:

     (A)    the class representatives and class counsel have adequately represented the class;

     (B)    the proposal was negotiated at arm's length;

     (C)    the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

     (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As explained below, consideration of these factors supports final approval of the Settlement.

## A.    THE CLASS REPRESENTATIVE AND CLASS COUNSEL HAVE ADEQUATELY REPRESENTED THE CLASS.

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. "The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals." Rubenstein, Newberg on Class Actions § 13:44 (5th ed. 2015); *see also Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"). This matter is no exception.

Here, because the case settled after over a year of pre-filing discovery, and robust and arm's-length settlement negotiations, the parties are fully informed of the relevant facts in the case. Critically, the facts of this case are not in dispute. Third parties Phoenix and Overstep originated and sold leads to AGAX Leads, who placed telephone calls to Class Members. Unlike many cases, the dispute in this case, as well as the basis of the settlement, is largely tied

to the legal significance of those undisputed factual allegations. The parties vigorously disputed whether Allstate was vicariously liable for AGAX Leads' calls, whether Phoenix and/or Overstep obtained any Class Members' prior express consent, and whether the rules regarding the National Do-Not-Call registry were violated.

Thus, notwithstanding the fact that no formal discovery had occurred in this case, all parties entered into negotiations with full knowledge and confirmation of all relevant information. The settlement process took seventeen months, including five months of negotiations to hammer out the final settlement terms. *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 244 (S.D. Ohio 1991) (approving settlement reached "[a]fter almost six months of concerted negotiations"); *In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 330, 350 (N.D. Ohio 2001) ("Moreover, when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair.") (citation omitted). Under these circumstances, the parties were well aware of the potential strengths and weaknesses of the potential claims.[3]

In addition, a plaintiff and counsel are adequate if "[counsel] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, Plaintiff's claims are aligned with the claims of the other Class Members. She thus had every incentive to vigorously pursue the claims of the class, as she has done to date by remaining involved in this matter since its

---

[3] *See also In re AOL Time Warner ERISA Litig.,* Case No. 02-cv-8853, 2006 WL 2789862, at *7 (S.D.N.Y. Sept. 27, 2006) ("The relevant inquiry . . . is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement. The parties need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the settlement." (internal quotation marks and citations omitted); *Baptista v. Mut. of Omaha Ins. Co.,* 859 F. Supp. 2d 236, 241 (D.R.I. 2012) (finding that the parties had sufficient information to settle the case intelligently, notwithstanding that "[d]iscovery in this case appears to have been minimal and primarily informal").

inception, including in the settlement process. In addition, Plaintiff retained the services of law firms with extensive experience in litigating consumer class action cases generally, and TCPA actions in particular. Plaintiff's counsel believe that the parties' settlement is fair, reasonable, and adequate, and in the best interests of the members of the Class. Plaintiff's counsel also believes that the benefits of the parties' settlement far outweigh the delay and considerable risk of proceeding to trial.

**B.      THE SETTLEMENT WAS NEGOTIATED AT ARM'S-LENGTH BY VIGOROUS ADVOCATES, AND THERE HAS BEEN NO FRAUD OR COLLUSION.**

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("In evaluating a proposed settlement of a class action, the district court is required to examine the terms of the settlement and the process by which the settlement was arrived at, to make sure that the terms are reasonable and that the settlement is not the product of fraud, overreaching, or collusion."); Newberg § 13:14 ("The primary procedural factor courts consider in determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arms-length-noncollusive negotiations.").

Here, the Settlement Agreement resulted from good-faith, arm's-length settlement negotiations, culminating in a mediation session with Honorable Morton Denlow (Ret.) of JAMS. Plaintiff and Defendant submitted detailed mediation submissions to Judge Denlow setting forth their respective views as to the strengths of their cases. Accordingly, the parties negotiated their settlement at arm's-length, absent any fraud or collusion. *See Baptista*, 859 F. Supp. 2d at 241 ("In light of these facts . . . the Court concludes that this is a good settlement which was achieved at an arm's length negotiation with the services of a mediator.") Moreover,

- 7 -

Judge Denlow has mediated thousands of cases, including many TCPA class action cases similar to this one.

## C.     THE SETTLEMENT PROVIDES SUBSTANTIAL RELIEF FOR THE CLASS

Plaintiff's and her counsel's zealous advocacy, the arm's-length nature of the Settlement, the relief afforded under the Agreement, and the equitable treatment to the Class all support a finding that the Settlement is fair, reasonable, and adequate. As further detailed below, the Settlement should be approved.

### 1.     Diverse and substantial legal risks weigh in favor of settlement.

The Court must also consider the likelihood and extent of any success absent settlement. With this in mind, Plaintiff understands that Defendant has several defenses that would be case-dispositive if it prevailed.

Defendant contended that it was not liable for calls placed by AGAX Leads.  To prevail on the merits, Plaintiff would be required to demonstrate that Defendant should be held vicariously liable for the business recruitment practices of its individual insurance agents, who are in turn responsible for the telemarketing actions of AGAX Leads (the company hired to place telephone calls) and Overstep and Phoenix (the companies AGAX Leads hired to generate and sell insurance leads).  Although Plaintiff believes her position to be legally meritorious, she faced the risk that the Court or a jury would be persuaded that assigning liability for an alleged sub-agent's actions is too attenuated.  To the extent the vicarious liability question will determine the outcome of the case, all Plaintiff's eggs are in one basket; a litigant with ordinary risk tolerance would seek a reasonable compromise rather than insisting on winning all or taking nothing.  This issue counsels in favor of settlement.

Defendant also argues that Plaintiff would not be able to maintain a certified class. In particular, Defendant argues that individual issues predominate over common questions of law

and fact. Defendant asserts that many, if not all, of the calls at issue were actually placed with the recipient's prior express consent. *See Ikuseghan v. Multicare Health Sys.*, No. 3:14-CV-05539-BHS, 2016 WL 3976569, at *3 (W.D. Wash. July 25, 2016) (approving TCPA settlement and explaining that "[h]ad …the consent issue been decided against the Class, the Class would likely get nothing.").

Plaintiff disputes these defenses and all others raised by Defendant. But the likelihood of success at trial is far from certain. *See Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, *10 (N.D. Ill. Aug. 29, 2016) ("In light of the potential difficulties at class certification and on the merits . . ., the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise."). In that light, the proposed settlement represents substantial value for Class Members, and represents a reasonable choice under the circumstances over continuing to pursue claims in litigation.

      **2.**    **The monetary terms of this proposed settlement fall within the range of prior TCPA class action settlements.**

Courts measure class action settlements against the Class's potential recovery at trial, but recognize that a settlement, by definition, involves Class Members receiving less than the full potential value of their claims. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class."); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000) ("[T]he Court may not withhold approval simply because the benefits accrued from the agreement are not what a successful plaintiff would have received in a fully litigated case." (internal quotation marks and alterations omitted)). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy

- 9 -

and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Here, the parties agree to resolve this matter for a settlement recovery of $450 for every Class Member. This figure compares extremely well with many other TCPA class action settlements that courts have approved. *See, e.g.*, *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members would receive an estimated $40); *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044-45 (S.D. Cal. 2015) (approving TCPA settlement in which class members received $13.75 each, noting that such a figure "appears to be on the low end of monetary recovery for TCPA class action settlements").

### 3.    The award of attorneys' fees and incentive awards is fair and reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiff's counsel sought an award $99,500.  Agr. ¶

5.01. This amount falls squarely in line with many other approved class settlements in the Sixth Circuit. When "awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). Moreover, all fees and costs awarded will be paid by Defendant and will not reduce the amount paid to the Class in any way. Finally, no class member has objected to the amount of fees.

In addition, Plaintiff has requested a service award of $1,000 to Morgan Carpenter. The service award is likewise consistent with awards from other class actions. *See Liberte Capital Grp. v. Capwill,* No. 5:99-cv-818, 2007 WL 2492461, at *1 (N.D. Ohio Aug. 29, 2007) ("Incentive awards, where appropriate, generally range from a few thousand dollars to $85,000"); Newberg § 17:8 (noting a 2006-2011 study that showed a median incentive award of $5,250).

The Court has already approved Plaintiff's request for fees and incentive awards. Dkt. No. 17.

## D. THE METHOD OF PROVIDING RELIEF IS EFFECTIVE AND TREATS ALL MEMBERS OF THE CLASS FAIRLY.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement provided the gold standard in class member relief: cash payments. Moreover, the allocation of the Settlement Fund among the Class Members is straightforward, as each member of the Class who submitted a valid claim form will receive $450. Class Members were not required to produce any records or other documents, and besides a simple claim form, there are no impediments to receiving compensation.

## II.    THE SETTLEMENT SATISFIES RULE 23.

Rule 23(e)(1)(B), as amended in 2018, provides that a Court should determine at preliminary approval and before issuing notice whether giving notice is "justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." This Court already found at preliminary approval that it was "likely" to find that the Settlement Agreement fair, reasonable, and adequate, that Class member notice was appropriate and warranted, and that the Class should be certified. The Class satisfies the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), and thus supports final approval

### A.    THE MEMBERS OF THE CLASS ARE SO NUMEROUS THAT JOINDER OF ALL OF THEM IS IMPRACTICABLE.

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[W]hile there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co*, 458 F.3d 549, 552 (6th Cir. 2006) (explaining that "(internal quotation marks omitted)). Here, there are approximately 500 Class Members. Joinder, therefore, is impracticable, and the Class thus easily satisfies Rule 23's numerosity requirement.

**B.  QUESTIONS OF LAW AND FACT ARE COMMON TO THE MEMBERS OF THE CLASS.**

Rule 23(a) also requires that "there are questions of law or fact common to the class."

Fed. R. Civ. P. 23(a)(2).  This said, "there need only be one question common to the class, so

long as the resolution of that question will advance the litigation." *Philips v. Philip Morris Cos.*

*Inc.*, 298 F.R.D. 355, 363 (N.D. Ohio 2014) (internal quotation marks and alteration omitted).

Here, the claims of the members of the Class stem from the same factual circumstances—

telephone calls sent by a single entity (AGAX Leads) to potential Allstate customers, in alleged

violation of the TCPA.  Plaintiff asserts that common questions, therefore, include whether the

messages violated the TCPA.  Consequently, the class satisfies Rule 23's commonality

requirement.

**C.  PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLAIMS OF THE MEMBERS OF THE CLASS SHE REPRESENTS.**

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of

the class. Fed. R. Civ. P. 23(a)(3).  Typicality determines where the nature of the plaintiff's

claims, judged from both a factual and legal perspective, are such that in litigating his or her

personal claims he or she reasonably can be expected to advance the interests of absent class

members. *See Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 156-57 (1982).  A "plaintiff's

claim is typical if it arises from the same event or practice or course of conduct that gives rise to

the claims of other class members, and if his or her claims are based on the same legal theory."

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citation omitted).

Plaintiff, like all Class Members, received a telephone call from AGAX Leads.  Plaintiff

brings a single legal claim—for violations of the TCPA—based on that singular factual

predicate.  Plaintiff thus asserts that the typicality requirement is met here.

- 13 -

2255039.1

**D.** **THE QUESTIONS OF LAW AND FACT COMMON TO THE MEMBERS OF THE CLASS PREDOMINATE OVER ANY QUESTIONS POTENTIALLY AFFECTING ONLY INDIVIDUAL MEMBERS.**

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. Predominance is "readily met" in certain consumer cases. *See id.* at 625. The touchstone for predominance analysis is efficiency. It is not necessary that all questions of law or fact be common; only some questions must be common, and they must predominate over individual questions. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("The predominance inquiry asks whether common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.") (citation omitted). Rather, to satisfy the predominance requirement, "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject to individualized proof." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (internal quotation marks omitted).

Here, the central legal issues are whether Defendant is vicariously liable for AGAX Leads' calls, and whether Defendant can establish an affirmative defense of prior express consent. Plaintiff asserts that this is sufficient to satisfy the predominance requirement, as there are few individualized questions to be determined.

**E.** **A CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE METHODS FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CLAIMS OF PLAINTIFF AND THE CLASS.**

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate

actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because Plaintiff seeks to certify a class in the context of a settlement, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no individual member of the Class has an interest in controlling the prosecution of this action because Plaintiff's claims and the claims of the members of the Class are the same, and they are all relatively modest. Plaintiff asserts that alternatives to a class action are either no recourse for hundreds of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice.

## III.    THE PARTIES' NOTICE PLAN SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS REQUIREMENTS.

Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union*, 497 F.3d at 629-30 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Such notice of a proposed settlement to class members must be the "best notice []  practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to

all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

As set forth above, 52 class members made valid claims under the settlement.  Ex. B, Declaration of Chumley, at ¶ 18.  This represents a claims rate of 10.4%, which is on the high side of claims rates in similar TCPA cases.  *See Izor v. Abacus Data Sys.,* Case No. 19-cv-01057-HSG, 2020 U.S.Dist. LEXIS 239999, at * 19 (N.D. Cal. Dec. 21, 2020) (approving a TCPA settlement with a claims rate of 15%); *Farnham v. Caribou Coffee Co.,* Case No. 16-cv-295-WMC, 2017 U.S.Dist. LEXIS 214929, at * 23 (W.D.Wisc. Dec. 15, 2017) ("the actual claims rate of 13.9% -- more than double the expected 5% rate -- supports finding that the settlement is fair."); *Couser,* 125 F. Supp.3d at 1044 (describing a claims rate of 7.7% as "higher than average"); *see also Abante Rooter & Plumbing v. Pivotal Payments,* Case No. 3:16-cv-05486-JCS, 2018 U.S.Dist. LEXIS 232054, at ** 12-13 (N.D.Cal. Oct. 15, 2018) (approving a TCPA settlement where there were 37,970 claims out of 1,750,564 notices mailed—a 2.1% claims rate). Plaintiff respectfully submits that these class members submitted claims because the Settlement is fair, adequate, and reasonable.

## **CONCLUSION**

Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Dated: June 9, 2022   By:  */s/ Michael J. Boyle, Jr.*

       MEYER WILSON CO., LPA
       Matthew R. Wilson
       Email:  mwilson@meyerwilson.com
       Michael J. Boyle, Jr.
       Email:  mboyle@meyerwilson.com
       305 W. Nationwide Blvd.
       Columbus, Ohio 43215
       Telephone:  (614) 224-6000
       Facsimile:  (614) 224-6066

       LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
       Daniel M. Hutchinson (admitted *pro hac vice*)
       Email:  dhutchinson@lchb.com
       275 Battery Street, 29th Floor
       San Francisco, California  94111-3339
       Telephone:  (415) 956-1000
       Facsimile:  (415) 956-1008

       *Attorneys for Plaintiff and the Proposed Class*

## Certificate of Service

I hereby certify that on June 9, 2022 I served the foregoing to all counsel in this matter via ECF notification:

     /s/  *Michael J. Boyle, Jr.*

     One of the Attorneys for Plaintiff and the Class